## MARY L. HIGGINS *vs.* CATHERINE McCABE.

Suffolk. April 1; Nov. 12. — Nov. 16, 1878.

In an action of tort, the declaration alleged, that the mother of the plaintiff, being about to be delivered of the plaintiff, employed the defendant as a midwife; that the defendant, while so employed, pretending to be competent and skilful in treating diseases of the eyes, such as the plaintiff then had, undertook the treatment of the plaintiff, and refused to allow a regular physician to be called in, and so negligently and unskilfully treated the plaintiff that the plaintiff became totally blind. The plaintiff's evidence tended to show the employment of the defendant; that a disease of the plaintiff's eyes, a few days after birth, was called to the attention of the defendant, who said she could cure it, and had cured other children so affected, and told the plaintiff's mother not to call in a physician; that she prescribed simple washes; and that the plaintiff soon after became blind. There was also expert testimony to the effect that the disease was a serious one, which probably could have been cured had it been properly treated in time; that the defendant's remedies were not proper in such a case, and that more severe remedies were required. *Held,* in the absence of evidence that

the care of the child's eyes was included in the ordinary duties of a midwife, that it must be considered as not embraced in the contract; that the defendant's services in regard to the eyes were gratuitously rendered; and that the jury would not be warranted in returning a verdict for the plaintiff. *Held, also,* that a question to a witness for the plaintiff, if she knew what duties the defendant took upon herself in the general course of her business as midwife, was properly excluded.

TORT. Writ dated January 18, 1877. The declaration was as follows:

" And the plaintiff says, that the defendant held herself out as a competent and skilful midwife practicing in Boston; that the mother of plaintiff was about to be delivered of child, and, at the defendant's request, employed the defendant as midwife; that thereafterwards the mother of plaintiff was delivered of child, being the plaintiff, and the defendant acted as midwife; and the defendant neglected to take proper care of the plaintiff, and treated the plaintiff so negligently and carelessly that the plaintiff contracted a disease of the eyes, and became totally blind.

" And the plaintiff further says, that the defendant, while so employed as midwife, pretending to be competent and skilful in treating diseases of the eyes, such as plaintiff then had, undertook the treatment of plaintiff, and so negligently and unskilfully treated the plaintiff that the plaintiff became totally blind.

" And the plaintiff further says, that the defendant, while so employed as midwife, asserted that she was competent to treat the disease of plaintiff's eyes, and refused to allow a regular physician to be called in, and so unskilfully and carelessly treated the plaintiff that the plaintiff became totally blind."

The answer contained a general denial; alleged contributory negligence on the part of the plaintiff and her parents; denied that the defendant was employed as midwife, or neglected to take proper care of the plaintiff; and averred that whatever the defendant did for the plaintiff, or her mother, was done by the defendant in a friendly way, and as a matter of charity, and for no consideration; and that she did not represent herself to be skilful in treating diseases of the eyes, or skilful in treating any disease, and did not treat the plaintiff as a skilled person for a disease, but whatever she did was done at the request of the mother of the plaintiff, and under her direction.

Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, which, after referring to the pleadings, pro ceeded in substance as follows:

Margaret C. Higgins, the mother of the child, testified that she had known the defendant for twelve years; that the defendant's well-known business was that of midwife; that she had employed the defendant in her family twice before as midwife, and had paid her for such services; that, being about to be delivered of the plaintiff, she sent her husband to procure the services of the defendant; that, shortly after the defendant came, the child was born; that, after the birth of the plaintiff, the defendant told her that she would come in once a day for nine days and take care of the witness and the child; that the plaintiff was born on May 5, 1876; that, three days after, she noticed an inflammation of one of the child's eyes, and called the defendant's attention to it; that the defendant said it was nothing serious; that it resulted from too much light, and directed the witness to darken the room and to dip a linen cloth in water and place it on the child's eye; that the room in which she was ill was a small bedroom leading from the kitchen, and had one window without blinds, over which a white curtain was nailed; that, in accordance with the defendant's direction, the room was darkened, a shawl being pinned over the curtain, and a cloth dipped in water was placed upon the child's eye; that the next day the defendant again told the witness that it was nothing serious, and told her that she could cure it, and sent to an apothecary's and got some rose-water, with which she washed the child's eye; that she came in again that evening and washed the child's eyes, and thereafter for two weeks she came in twice every day, and washed and dressed the child, and applied her washes to the child's eyes; that, two days after the first eye was affected, the other eye began to be affected; and she spoke to the defendant and said she was alarmed about the child's eyes, and thought that some competent physician should be called in; that the defendant told her that she need not be alarmed; that she, the defendant, could cure the disease; that she had cured with her washes several children so afflicted, and mentioned the child of one Mrs. Stevens, whose eyes were much sorer than the plaintiff's, and said she had cured the child's eyes with her

washes; that the defendant also told her not to call in a doctor, saying that "the doctors spoiled the eyes of half the children," that "the doctors' washes would burn the child's eyes out;" that she then told her to send for a fresh egg and have it beaten up with sugar, and wash the child's eyes with that; that she sent for the egg, and the defendant washed the child's eyes with that, and continued the use of that for two weeks; that the defendant kept telling her that the eyes were getting better; that at the end of two weeks she sent for Dr. McDonald for herself; and then called his attention to the child's eyes; that the next day the witness sent for Dr. Pagani, who came, and ordered a prescription and washed the child's eyes, and examined them; but did not undertake to cure the child's eyes; that the child was then taken to the Eye and Ear Infirmary, but, in consequence of information received there, was not left for treatment; that, about two months after birth, the child was taken to Dr. Stevens, but was then totally blind; that the defendant called, after Dr. Pagani had gone, and used more of the egg and sugar on the child's eyes, saying that "the doctor's washes would burn the child's eyes out;" that the witness during the two weeks was sick in bed, and her husband was away at work during most of the time in the day, a girl about fourteen years old doing the work about the house; that the child, when not in the defendant's hands, was in bed with its mother, except once when it was taken up stairs for three or four minutes; that a fire was kept in the kitchen, and the bedroom was kept very warm.

The witness was then asked by the plaintiff's counsel if she knew what duties the defendant took upon herself in the general course of her business as midwife. On the defendant's objection, the judge excluded the question.

William Higgins, father of the child, testified that he went for the defendant at his wife's direction, and asked her to come to his wife, telling her he would pay her whatever she asked; that she said she would come at once, and would come in once a day for nine days, and take care of the mother and child; that he heard the defendant tell his wife not to call in a physician; that the defendant kept telling them that the eyes were getting better, and that he noticed that the inflammation was going down on the outside of the eyes.

Dr. McDonald testified that he saw the child about two weeks after its birth; that the sight of one eye was then totally gone, and he was in doubt about the other, — he thought there might have been a little sight left in it; that the disease was purulent ophthalmia, a disease which should be attended to in its first stages, but in the hands of a competent and skilful person it rarely ever resulted in loss of sight; that he never used rose-water and egg and sugar, but thought they were harmless, and served to keep the eye clean; that in his opinion the treatment was not proper, as it did not go far enough; that the remedy commonly used was a solution of alum: that the eyes must be kept clean, and, as far as the rose-water and egg and sugar contributed to that, they were proper, but he should not stop there. On cross-examination, he was asked if it was not possible that the sight might have been lost even if the child had been in the hands of a competent and skilful physician. He said it was possible, but not probable; that if the child had had the most skilful treatment and was exposed to too much light, or to cold, it would nullify the treatment; that he had known Mrs. McCabe for twelve years, and considered her a skilful midwife.

Dr. Stevens testified that he had given special attention to diseases of the eye; that he saw the child about two months after its birth, and it was then totally blind, and incurable; that the disease was purulent ophthalmia; that in his opinion the treatment of defendant was not proper; that he should object to the egg and sugar, — the rose-water was good to keep the eyes clean, but he thought lukewarm water was better; that the common remedy was a solution of alum, and in severe cases nitrate of silver; that he thought that the articles used by the defendant could not be called remedies, but the rose-water he called an adjuvant. He also testified, that the eyes should be kept clean, and good care taken of the patient, — without this the remedies would probably fail; that this was a severe case, calling for severe treatment; that for the last ten years he had treated, on an average, five or six cases of this disease a year, and had been unsuccessful in only one, where he lost the sight of one eye, both being affected; that this was the only case of unsuccessful treatment that had come to his personal knowledge, though he had heard of others.

The defendant asked the judge to rule, that upon this evidence the action could not be maintained, and that there was no evidence to go to the jury. The judge so ruled, and ordered a verdict for the defendant; and the plaintiff alleged exceptions, which were argued in April 1878, and afterwards submitted on briefs to all the judges.

*M. H. Swett*, for the plaintiff. There was evidence in this case that the defendant, a midwife, was employed, for a compensation, to take care of the mother and child for nine days; that within that time, on the defendant's attention being called to the condition of the child's eyes, she said it was nothing serious, and that she could cure it, and prescribed remedies; that, on the mother becoming alarmed, and wishing a physician to be called in, the defendant told her not to do so, and repeated the statement that she could cure the child, and continued to do so. There was also evidence that this treatment was improper, and that in consequence of it the child became entirely blind. On this evidence, it is submitted that the action can be maintained.

1. The fact that the defendant undertook the treatment of the plaintiff, and did treat her for a disease of the eyes, created a legal duty on the part of the defendant towards the plaintiff. Whether the defendant was a regular physician or not is immaterial. She assumed to be competent to treat the disease, and did treat it in an ignorant or negligent manner, and is therefore liable. *Pippin* v. *Sheppard*, 11 Price, 400. *Rex* v. *Spiller*, 5 C. & P. 333. *Ruddock* v. *Lowe*, 4 F. & F. 519. *Jones* v. *Fay*, 4 F. & F. 525. *Seare* v. *Prentice*, 8 East, 348. *Slater* v. *Baker*, 2 Wils. 359. *Long* v. *Morrison*, 14 Ind. 595. *Carpenter* v. *Blake*, 60 Barb. 488.

2. If material, the question should have been left to the jury whether the care of the child's eyes was not within the original contract entered into with the defendant; and if not, whether there was not an implied contract by which the defendant would have been entitled to pay for the services performed in relation to the eyes. But, even if the service was gratuitously rendered, the duty to exercise reasonable care and skill still existed; and the only question would be as to the degree of care and skill. *Coggs* v. *Bernard*, 2 Ld. Raym. 909. *Shiells* v. *Blackburne*, 1

H Bl. 158.  *Wilson* v. *Brett*, 11 M. & W. 113.  *Gill* v. *Middle-ton*, 105 Mass. 477.  *Jenkins* v. *Bacon*, 111 Mass. 373.

3. The question to Mrs. Higgins was competent, on the issue of what duties were included within the contract.  The defendant had been employed by the witness twice before in the same capacity; and what duties the defendant was accustomed to perform under such a contract were known to the witness, and the contract must have been entered into with reference to them.

*W. Gaston & J. W. O'Brien*, for the defendant.

COLT, J.  This action proceeds upon the ground that the defendant failed to discharge a legal duty which she owed the plaintiff, resulting in the injury complained of.  The question is whether the evidence relied on by the plaintiff would justify a verdict in favor of the child; and, in the opinion of a majority of the court, it would not.

It appears that the defendant was originally employed only as a midwife.  The parents had employed her twice before in that capacity.  There was no competent evidence that the treatment of diseases of the eyes which might be developed in the child was embraced in the duties which the defendant undertook as midwife; and there was no evidence that the defendant was unskilful or negligent in the performance of any of the duties with which she was properly chargeable in that capacity.

But it is insisted that, independently of the employment as midwife, the jury upon this evidence might properly find that the defendant, professing to have superior skill and experience, held herself out as competent to cure this particular disease, and thereupon was permitted by the mother to assume the treatment of it.  The evidence on which it is sought to charge the defendant with this additional duty is found in the testimony of the mother; and that testimony must be construed with reference to the character and relation of the parties, and the admitted facts in the case.  The services of the defendant in respect to the cure of this disease were wholly gratuitous; they were performed as acts of benevolence only.  The defendant was a midwife; the jury would not be justified in finding that she claimed to possess, or might reasonably be expected from her calling to have, the peculiar knowledge, skill, and experience of an expert in such mat-

ters. The representations of the defendant, that she could cure the child with simple remedies and washes, that she had cured other children in the same way, who were similarly afflicted, and that there was no need of a doctor, were but the expression of an opinion as to the efficacy of her remedies, and did not imply that she undertook to use that higher skill of the medical profession which is required in the treatment of the more complicated and delicate organs. The question was whether she had discharged the duty which she assumed with that skill which she professed to have, and with that diligence which might reasonably have been expected of her. Upon that question, the fact that the service was rendered without compensation must have an important, if not decisive, bearing. It is often said, that a gratuitous agent is liable for gross negligence only; but without regard to degrees of negligence, it is plain that the duty imposed upon such an agent is less stringent than when the service undertaken is founded upon a consideration paid. Under the rule requiring ordinary care as applied to this case, we see no evidence of neglect in any degree. A physician must apply the skill and learning which belong to his profession; but a person who, without special qualifications, volunteers to attend the sick, can at most be only required to exercise the skill and diligence usually bestowed by persons of like qualifications under like circumstances. To hold otherwise would be to charge responsibility in damages upon all who make mistakes in the performance of kindly offices for the sick. *Gill* v. *Middleton*, 105 Mass. 477, 479. *Leighton* v. *Sargent*, 11 Foster, 119. *Simonds* v. *Henry*, 39 Maine, 155. *Lanphier* v. *Phipos*, 8 C. & P. 475. *Hancke* v. *Hooper*, 7 C. & P. 81.

The defendant was attentive and diligent in her treatment of the child, and in the use of the remedies she proposed. There was evidence, it is true, from regular physicians, that, if other and more powerful remedies had been seasonably applied, they would probably have effected a cure; but these were remedies known to the medical profession, of which the defendant neither had nor professed to have knowledge. It was not a case where the defendant, as in the cases cited by the plaintiff, assumed to act as a regular surgeon or a regular practitioner. *Ruddock* v. *Lowe*, 4 F. & F. 519. *Jones* v. *Fay*, 4 F. & F. 525.

The question put by the plaintiff to Mrs. Higgins was properly excluded. The knowledge which the witness had of the duties which the defendant usually took upon herself in the general course of her business as midwife was immaterial. There was no evidence that she was employed to do more than was commonly required of midwives, or that she undertook or volunteered to do more, except in the way previously considered.

*Exceptions overruled.*