## WILLIAM E. HIGGINS *vs.* PAUL RUSSO.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The defendant, an attorney at law, placed a writ against *A* in the hands
of the plaintiff, a deputy-sheriff, and directed him to attach certain
specific property, although the attorney knew that the title to such
property was in dispute and that the attachment would probably
be contested, and had already received money from his client to
use, if necessary, in defending the validity of the contemplated
seizure. *Held* that upon these facts the law would imply a promise
upon the party of the attorney to personally indemnify the officer
for any loss he might sustain by attaching the property in question.
While making the attachment the officer was informed that the property belonged to *B*, the brother of *A*, and was shown a bill of sale
to *B*, not from *A*, but from other persons. *Held* that the failure of
the officer—who acted throughout in entire good faith—to inform
the attorney of the names of the vendors in the bill of sale, did
not preclude his recovery.

Argued June 21st—decided August 1st, 1899.

ACTION by a deputy-sheriff to recover the amount of a judgment against him for a wrongful attachment directed by the defendant, brought to the Court of Common Pleas in New Haven County and tried to the court, *Studley, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The complaint contained two counts: the first, for indemnity for the amount paid by plaintiff to satisfy a judgment against him for having attached certain goods at the direction of the defendant; and the second, for his fees as an officer in the service of process.

The court found the following facts: On December 10th, 1897, the Roma Military Band of New Haven caused their counsel, Paul Russo, the defendant in this action, an attorney at law, to issue a writ of attachment in favor of said Band and against one Fioravanta Riccardelli, and the said attorney placed the said writ in the hands of William E. Higgins, the present plaintiff, a deputy-sheriff for the county of New Haven, with instructions to serve the said writ and attach certain goods as the property of the said Fioravanta Riccardelli.

The said Russo gave the plaintiff to understand that there had been some fraudulent transfer of the property proposed to be attached, which he, Russo, knew all about, and he instructed the plaintiff to make the attachment at a certain time when the said Fioravanta Riccardelli would be in his store, and to take with him and place in charge of the said property as keeper, one Bruno, who was in the employ of the said Russo, and also to suggest to the parties that they substitute a bond for the attachment, or replevy the goods.

The said Russo did not instruct the plaintiff to make an investigation in regard to the supposed fraudulent transfer, or to satisfy himself in regard to the ownership of the property before making an attachment. The plaintiff did not know the said Roma Military Band, or any of the members thereof. He received all of his instructions from the said Russo, and the latter did not refer him to said Band for any purpose whatever.

On said day the plaintiff, in company with the said Bruno, went to said store and attached the said property as directed, and placed the said Bruno in charge thereof as keeper. When he arrived at said store he found the said Fioravanta and his brother Orlando and others present, and was informed that the property did not belong to the said Fioravanta, but did

belong to his said brother Orlando, and was shown a bill of sale of the property from certain other persons to said Orlando.

The said Higgins left the said Bruno in charge of the property and went to the said Russo and reported that he had attached the goods and that they had shown him a bill of sale. The said Russo replied that he expected that, and that he, Russo, could hold the property. Higgins told him that he thought they would contest the matter, but did not tell him who appeared to be the grantors in the said bill of sale. The said Russo told him to go back and tell the parties that they had better give a bond, or replevy the goods, or he, Russo, would have the goods removed from the store; and the plaintiff did so.

On said December 10th, after the said attachment had been made, Mr. Pond, counsel for said Orlando, wrote to the plaintiff informing him of the said Orlando's claim, and that if the property was not returned suit would be brought against him, and the plaintiff called upon the said Pond and requested the latter to confer with Russo, and informed the said Russo of the information he had received from Mr. Pond. The said Pond called up the said Russo by telephone, and told him that the property did not belong to the person against whom the writ ran; that if he would call upon him, Pond, he would show him a bill of sale and tell him what his claims were. The said Russo did not learn that the said bill of sale was not from the said Fioravanta, until the same was put in evidence upon the trial in the case of *Orlando Riccardelli* v. *Higgins*.

When said writ was issued by said Russo, the said Roma Military Band by its agent executed and delivered to him an instrument by which they agreed, in substance, that the sum of $90, on deposit in the so-called Italian Bank of said Russo, might be used in the prosecution of said attachment and for the payment of any loss that the plaintiff as such officer might sustain from having attached said goods, and promised to pay such damage from other sources if said sum should prove insufficient. The said Russo retained this document in his possession. He informed the plaintiff that he had it, but did not offer to deliver it to the plaintiff, nor did the latter demand it.

The said Orlando Riccardelli brought suit for trespass against the present plaintiff for taking the said goods on said attachment, and recovered judgment, and the plaintiff paid on execution in said action the sum of $219.88 on July 14th, 1898.

The said Russo, with the knowledge of the plaintiff, appeared with associate counsel to defend the said action of Orlando Riccardelli against this plaintiff, and the said cause was thereupon tried, and the plaintiff appeared as a witness therein, and said Russo drew out $30 of the said sum of $90 deposited in his said bank as aforesaid, and used the same to pay himself and associate counsel for services rendered in defending the said action. The said Russo did not consult the plaintiff about the withdrawal and appropriation of the said $30. He afterwards offered to turn over to the plaintiff the balance remaining of said $90, and to make some mutual arrangement to settle the balance of said judgment. The plaintiff did not accept the proposition.

After the said judgment had been rendered, Russo advised the plaintiff to sell the attached property to a customer procured by him, the said Russo, and Higgins sold said property to said customer, and eventually received therefor the sum of $65.70. The judgment for the plaintiff was upon the first count, and the court did not consider said sum of $65.70, nor the officer's fees of $54.14 named in the answer to the second count.

*Levi N. Blydenburgh,* for the appellant (defendant).

*William B. Stoddard* and *Robert C. Stoddard,* for the appellee (plaintiff).

HALL, J. The trial court rendered judgment against the defendant for the amount which the plaintiff had been required to pay to satisfy a judgment against him for having, as a deputy-sheriff, attached certain goods under a writ placed in his hands for service by the defendant as an attorney at law.

Higgins *v.* Russo.

This judgment is claimed to be erroneous upon three grounds: first, that the defendant, being an attorney at law, and known by the plaintiff to have been acting as such, did not, by delivering to him as an officer a writ of attachment with directions to take particular goods as the property of the debtor, become thereby liable to reimburse him for loss sustained because the goods so attached were the property of another; second, that upon the facts found there was no promise to indemnify the officer; third, that by his misconduct or negligence in failing to give to the attorney certain information which the officer had gained concerning the title to the goods attached, he forfeited his right to be reimbursed for the amount so paid by him.

In the case of *Heath* v. *Bates*, 49 Conn. 342, 345, this court said: "The rule seems a reasonable one, and the only reasonable one, that an attorney placing a writ in an officer's hands for service, is to be regarded as personally requesting the service and as personally liable for it, unless he expressly informs him that he will not be personally liable, or there are circumstances which make it clear that that was the understanding of the parties."

In the case at bar the attorney knew before employing the officer that the goods, afterwards attached as the property of the defendant named in the writ, were claimed by his brother, who subsequently proved his title to them. He expected that the question of the ownership of the property taken would be contested, and had received from his clients a sum to be used to enforce their claim and to reimburse the officer for any loss he might sustain by attaching these goods. The officer was not referred to the attorney's clients, nor did he know them. He received all his instructions from the defendant, and was by him expressly directed to take this particular property and to hold it. Under the circumstances the attorney is justly regarded as having personally requested the services rendered, and as having personally directed the plaintiff to take the property attached. He is therefore personally liable for the consequences of his acts, one of which is the legal inference from these facts of a promise to reim-

burse the officer for any loss suffered by having taken the property of the wrong person.

" The law, however, implies a promise of indemnity, on the part of the creditor, where he directs the officer to make a levy on any particular property." 1 Sw. Dig. * 542. " Where one employs another to do acts not unlawful in their nature, or on the face of them, for the purpose of asserting a right, the law implies a promise of indemnity. Where a creditor in an execution directs the officer to levy it on certain property shown to him, claiming it to belong to the debtor, if the property should prove to belong to some other person, and the officer should be subjected to pay for it in an action brought against him by the owner, he would have a claim of indemnity against the creditor." 1 Sw. Dig. * 414; *Stoyel* v. *Cady*, 4 Day, 222, 226; *Nash* v. *Smith*, 6 Conn. 421, 426; *Marcy* v. *Crawford*, 16 id. 549, 553.

The failure of the officer to inform the defendant of the names of the grantors in the bill of sale shown him, does not affect the plaintiff's right of action nor the defendant's liability. The officer attempted to conceal nothing. It was reasonable for him to suppose that the defendant knew the grounds upon which the debtor's brother claimed title to the goods attached. The defendant could have learned by whom the bill of sale was given by inquiring of the vendee's attorney, Mr. Pond, or of the plaintiff.

It was not error to render judgment for the full amount paid by the plaintiff upon the execution against him. The defendant does not appear to have claimed, either in his answer or upon the trial, that he should be credited with the $65.70, the avails of the sale of the attached goods made by plaintiff upon his advice. That sum does not greatly exceed the amount admitted by defendant's answer to be due the plaintiff as officer's fees, which amount was not included in the plaintiff's judgment.

There is no error.

In this opinion the other judges concurred.