GEORGE E. STUCKEY, APPELLANT, V. ROY F. STUCKEY, APPELLEE.

10 N. W. (2d) 458

FILED JULY 9, 1943. No. 31613.

*Cook & Cook* and *Johnson & Johnson*, for appellant.

*Lyman M. Stuckey* and *Schaper & Runyan, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ., and TEWELL, District Judge.

TEWELL, District Judge.

This action was begun in the district court for Custer county. George E. Stuckey was the only plaintiff and Roy F. Stuckey was the only person named as defendant. Summons, regular in form and directed to the sheriff of Dawson county, was issued by the clerk of such court. This summons was regularly served upon the defendant in Dawson county, and return thereof made by the sheriff of Dawson county, all within the time specified therein. The defendant filed a special appearance by which he objected to the jurisdiction of the court in Custer county over his person. The trial court sustained such special appearance and dismissed the plaintiff's petition. The plaintiff has brought the cause to this court by appeal.

The question of whether or not such special appearance was properly sustained, under such conditions, is the sole question presented upon appeal for determination. The facts hereinafter stated are alleged by the petition to be true.

In the year 1926 the plaintiff and defendant were both stockholders in the Oconto State Bank. The defendant was then a large stockholder in, and the president of, the Lexington State Bank. At such time one Paul Cavenee was indebted to said Oconto State Bank in the sum of $12,711. The state of Nebraska, through its banking department, required said Oconto State Bank to liquidate such loan. The debtor Cavenee was then the owner of 558 acres of land which is described in the petition and located in Custer county, and then offered to convey such land to said Oconto State Bank in full payment of such indebtedness. The officers of said Oconto State Bank concluded that such an amount of real estate should not be taken into the assets of such bank, but no other form of payment could be made by said debtor. In October, 1926, the plaintiff and defendant entered into an oral agreement to the effect that the plaintiff should pay said indebtedness of said Cavenee from his own individual funds, and that said lands should be conveyed to said Lexington State Bank in trust for the purpose of repayment to the plaintiff of the amount paid by him in payment of said Cavenee debt, with interest thereon at seven per cent. per annum. By such agreement said Oconto State Bank was to collect the rents from such real estate, pay the taxes thereon, and pay the interest upon the amount due the plaintiff, until a sale of such real estate could be made. By such agreement the plaintiff and defendant agreed that if such land did not sell for a sufficient amount to repay the plaintiff both the principal and interest due him, that then defendant should pay the plaintiff one-half of the resulting deficiency, and that if such sale should bring more than the amount required to so repay the plaintiff, then the surplus should be divided equally between the plaintiff and the defendant. In accordance with such agreement the plaintiff paid said Cavenee indebtedness to said Oconto State Bank in the sum of $12,711 from his individual funds, and Cavenee in October, 1926, conveyed said real estate to said Lexington State Bank by deed. The method of handling such lands provided by such agree-

ment was used until in March, 1930, when the plaintiff and defendant purchased all of the capital stock of said Oconto State Bank other than that then owned by plaintiff or defendant. Thereupon the plaintiff and defendant liquidated said Oconto State Bank by transfer of a large part of its assets to the Farmers State Bank of Oconto which paid all debts of said Oconto State Bank. The plaintiff and the defendant retained certain former assets of the Oconto State Bank as their own, and such bank then ceased to exist as an operating bank. Such assets so retained are not described in the petition. The plaintiff and the defendant then entered into another oral agreement to the effect that the plaintiff should collect the rents from such lands, and therefrom pay the taxes and costs of looking after such lands, and apply any surplus upon the amount due the plaintiff. By such second agreement the Lexington State Bank was to continue to hold the title to said real estate in trust until a sale thereof could be made, the plaintiff and defendant to share equally any amount realized from said land over and above the amount due the plaintiff, and the defendant to pay the plaintiff one-half of any amount by which the sum so realized failed to pay the amount due the plaintiff. Under such agreement the plaintiff took charge of said lands, collected the rents therefrom, and paid the taxes thereon. About July 9, 1934, the Lexington State Bank conveyed said lands to the plaintiff. The plaintiff then mortgaged said lands to the Federal Land Bank of Omaha, Nebraska, to secure the payment of a loan of $7,-500 in amount, and applied such loan upon the amount due him under the above-mentioned agreements. From the time of such conveyance by deed to the plaintiff in 1934 to the date of the commencement of this action the plaintiff has collected the rents from such real estate and paid the taxes thereon. In his petition the plaintiff discloses the amounts received by him from rents between the date he took charge of the lands in March, 1930, and the date he received deed thereto from the Lexington State Bank in July, 1934, and also discloses the rents received by him between the date of

the receipt of such deed and the date of filing this action. The amounts paid out by the plaintiff for taxes and costs of handling such lands are pleaded in the petition. In short, the plaintiff's version of a proper accounting of his receipts and disbursements with reference only to such land as between himself and the defendant is set forth in the petition. The petition alleges a claim of ownership of an interest in such lands by the defendant, his refusal on demand to make an adjustment of the interest and liabilities of the parties with reference thereto, and the inability of the plaintiff to sell such land on account of the defendant's interest therein. The prayer of the petition is to the effect that the court shall adjudge the existence of the oral agreements pleaded in the petition, the plaintiff's performance thereof, and the amount remaining due to the plaintiff upon the said sum of $12,711 with interest thereon and for taxes paid by him that have not been repaid to him. The petition further prays that said lands be ordered sold at public vendue; that, upon confirmation of sale, the proceeds of such sale be paid to the plaintiff to the extent of the amount due to him, and that, in the event such proceeds are insufficient to pay such amount, the plaintiff be given judgment against the defendant for one-half of such insufficiency. Such other, further and different relief as may be just and equitable is also prayed.

In adjudging the merits of a special appearance for lack of jurisdiction of the person solely on account of improper venue, the court must consider the allegations of the petition as true, and determine such merits from the averments of such petition, the character of the judgment that might properly be rendered on default of appearance, and the place, time and manner of the service of process. 67 C. J. 24; *Terry v. Rivergarden Farms Co.*, 29 Cal. App. 59, 154 Pac. 476; *Work v. Associated Almond Growers*, 76 Cal. App. 708, 245 Pac. 790. In this case it is conceded that the summons was regular in form, and was served and returned in the manner and within the time prescribed by law. The question presented relates only to whether or not

the district court for Custer county is the proper venue of the action. The allegations of the petition must be considered as true, and the answer to this question must be found in such allegations and applicable statutory provisions.

Section 20-401, Comp. St. 1929, so far as applicable to this action, provides as follows: " * * * and all actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next following section: First. For the recovery of real property or of an estate or interest therein; Second. For the partition of real property; Third. For the sale of real property under a mortgage, lien or other incumbrance or charge." The "next following section," referred to in the above-quoted portion of section 20-401, refers only to cases affecting lands in two or more counties. A study of the allegations of the petition herein at once discloses that the plaintiff holds title to the lands involved in trust. No power to sell the land without the consent of the defendant is shown to exist. The defendant claims an interest in the land. If plaintiff did sell the lands without the defendant's consent, he might be liable to the defendant for its reasonable value rather than its sale price in an action for accounting, in case the defendant established that the sale price was less than the reasonable value. The beneficiaries of the trust held by the plaintiff are the plaintiff and the defendant. Under the terms of the agreements pleaded the lands must be sold and the sale price thereof determined, before the rights and liabilities of the parties can be determined. The action primarily is one to establish the fact that land is held in trust, and to have the same sold at judicial sale in order that the court may make an accounting between the parties under the rule, often announced, to the effect that when a court of equity has acquired jurisdiction of a cause for one purpose it may and should retain it generally for complete relief. The action is not primarily an action for an accounting with the sale of the land merely incidental thereto, as contended by the defendant. The district court for Dawson county could not, under our statutes, direct the

sheriff of Custer county to sell the land and make return of such sale to that court. The allegations of the petition require the judgment of the court to operate directly upon the *res,* before an accounting may be had. The primary object sought is the establishment of the trust and the judicial sale of the land under such trust. The venue of an action to establish that title to land held by the plaintiff is held by him in trust, and that the terms of such trust require the sale of such lands before an accounting may be had between the beneficiaries of such trust with reference to such land, and to decree a sale of such land at judicial sale, is the county in which such land or some part thereof lies, even though an accounting between such beneficiaries after such sale and a judgment against the person of defendant may be sought as a result of such accounting. 67 C. J. 52; *Miles v. Martin,* 103 Neb. 261, 171 N. W. 907; Comp. St. 1929, sec. 20-401; *Prudential Ins. Co. v. Bliss,* 123 Neb. 578, 243 N. W. 842.

The defendant appellee contends that this action is transitory in nature. He cites the case of *Scow v. Bankers Fire Ins. Co.,* 109 Neb. 241, 190 N. W. 858, in support of his contention. In that case the judgment sought was rescission of a contract for fraud, and cancelation of notes and mortgages upon real estate located in a foreign county and given to secure payment of the purchase price of stock in a corporation. As pointed out in that case the relief prayed would operate entirely against the person of the defendant. Appropriate space does not permit a discussion of the various cases cited by the defendant to support his contention. The defendant cites the following authorities: *Barnes v. Barnhart,* 102 App. Div. 424, 92 N. Y. Supp. 459; *Turlock Theatre Co. v. Laws,* 12 Cal. (2d) 573, 86 Pac. (2d) 345; *State v. District Court,* 120 Minn. 99, 139 N. W. 135; *Smith v. Barr,* 76 Minn. 513, 79 N. W. 507; *State v. District Court,* 85 Minn. 283, 88 N. W. 755; *State v. District Court,* 94 Minn. 370, 102 N. W. 869. In none of these cases is the primary object sought the judicial sale of real estate with an accounting merely incidental thereto. In fact in

each of them the primary object is relief against the person, with real estate merely incidentally affected.

Under the rules above set forth and for reasons above given the judgment of the trial court is reversed with instructions to reinstate the plaintiff's action, overrule the defendant's special appearance, and to require the defendant to plead within a time to be fixed by the trial court. The costs in this court are taxed to the defendant.

REVERSED, WITH DIRECTIONS.