NUDIE MAE WELDER *v.* CHRISTOPHER C. MERCER, JR.

5-5062                                   448 S. W. 2d 952

Opinion delivered January 19, 1970

*William Powell Thompson, Bud Whetstone* and *Bernard Whetstone,* for appellant.

*David Munroe,* for appellee.

LYLE BROWN, Justice. Nudie Mae Welder, appellant

here, instituted this suit against her attorney, Christopher C. Mercer, Jr., charging him with neglect of duty with respect to lodging an appeal in this court from an adverse judgment in the White County Probate Court. The trial court, sitting as a jury, absolved Mercer of any liability for damages and Nudie Mae Welder appeals. We shall refer to the parties as they appeared in the trial court.

The purported will of W. F. Caruth bequeathed his entire estate to plaintiff. A contest of the will developed and in that litigation Mr. Mercer represented Miss Welder. The probate court adjudged the will invalid on a finding that Caruth's signature was not authentic. Plaintiff and defendant entered into an agreement whereby the defendant was employed to perfect and process an appeal to this court. Of the agreed fee of $700, plaintiff paid defendant $400, whereupon defendant filed and served his notice of appeal and ordered the transcript. It is not disputed that the partial payment was more than sufficient to defray those expenses. The transcript was never lodged with this court. Plaintiff sued defendant for $400 and $12,000, the latter being the alleged value of the estate of W. F. Caruth. Additionally, plaintiff prayed for punitive damages. On appeal the prayer for judgment for the value of the Caruth estate is abandoned. That leaves the issues of whether plaintiff is entitled to recover $400 and punitive damages.

The proof in the record before us consists, in addition to the pleadings, of the discovery deposition of the defendant. That deposition was read in evidence at the trial and we perceive it composed the entire evidence in the case; in any event the defendant designated no additional record. From the deposition, and accompanying exhibits, we find this chronology of events:

1. In April and May 1963, defendant receipted plaintiff for a total of $400, each of the two receipts being marked "Expenses on appeal of Estate of W. F. Caruth." The transcript was ordered.

2. The clerk of the probate court wrote from Searcy to defendant in Little Rock, on May 8, 1963, concerning the status of the transcript: "The transcript is being prepared and, of course, we will want payment of those costs before the transcript is delivered."

3. The next letter from the clerk was dated July 18, 1963, and a bill for the cost of the transcript was included. "Enclosed please find a cost bill for $149.55. We are awaiting your instructions on delivery."

4. The time for lodging the transcript expired July 25, 1963. It never reached the clerk of the supreme court. It is admitted it was never delivered in person, nor was it mailed with the required filing fee.

5. It was almost a year after the time for lodging the transcript had expired that the trial court reporter and the probate clerk were paid by defendant for their services.

Of course the related facts, standing alone, call for these conclusions: Plaintiff and defendant entered into a contract whereby the defendant was to proceed with the appeal; plaintiff made partial payment of a sum satisfactory to defendant and sufficient to pay the current expenses; defendant gave notice of appeal and ordered the transcript; defendant was notified by the clerk that the cost of the transcript would have to be paid "before the transcript is delivered"; defendant did not pay the required fees and did not obtain the transcript; and defendant did not cause the transcript to be delivered to the clerk of this court.

Defendant did not deny the occurrences which we have recited. In response to the prima facie case established by the documented facts he testified entirely from memory (and three years after the recited incidents) that he relied on the telephoned assurance of the deputy probate clerk that the transcript would be by her mailed

to the clerk of our court and also a verbal extension granted him over the telephone by the clerk of our court. More specifically, he related that upon receipt of the probate clerk's letter of July 18, the defendant called from Little Rock to Searcy and talked to the deputy clerk; that she offered to mail the transcript to the clerk of the supreme court; that on the last day for the appeal to be lodged he again called the deputy clerk, who assured him she would place the transcript in the mail that day; that he immediately called the clerk of our court who informed defendant "it would be all right" if the transcript was placed in the mail that day.

Taking the defendant's testimony at face value, the deficiencies are at once apparent. Having had written notice from the probate court clerk (not the deputy clerk) that the cost of the transcript would have to be paid before delivery of the record, was it due diligence to rely on the assurance of an office deputy that the transcript would be released before payment? We think not. Surely the defendant must have misunderstood the clerk of this court when he says the clerk waived the rule of our court and granted an extension. Additionally, defendant does not purport to explain just how the record would be filed here unaccompanied by the required filing fee.

The customary procedures taken by an attorney when he is pressed for time include an application to the trial court or to this court for extension, or the filing of a partial record. Admittedly defendant did not resort to any of those approaches.

"Reasonable diligence and skill constitute the measure of an attorney's engagement with his client." *Pennington's Ex'rs. v. Yell*, 11 Ark. 212. We think the evidence shows gross dereliction of duty which caused plaintiff's advancement of $400 to go for naught. She is entitled to judgment in that amount. With respect to the claim for exemplary or punitive damages, we find

no merit. Punitive damages, if allowable under any circumstances in a case of this nature, would require a showing of more than gross negligence, such as the element of intentional wrong or conscious indifference. The evidence does not reach that proportion.

The facts were fully developed and we see nothing to be gained by ordering a new trial. We therefore reverse and remand with directions to enter judgment for plaintiff for $400.