Jerry CHATMAN *v.* Willard MILLIS, Jr.

74-139                                          517 S.W. 2d 504

Opinion delivered January 13, 1975

*Boyett & Morgan,* P.A., by: *Comer Boyett, Jr.,* for appellant.

*Pickens, Boyce, McLarty & Watson,* by: *James A. McLarty,* for appellee.

CARLETON HARRIS, Chief Justice. The question in this case is whether appellee, a psychologist, can be held liable to appellant for malpractice under the facts hereinafter set out.

The facts as set forth in appellant's complaint are as follows. Mrs. Robbie Chatman was divorced from her husband, appellant herein. Appellant had visitation privileges with the couple's 2½ year old son. Mrs. Chatman, partly because of actions of the child, became concerned that her ex-husband had subjected the child to homosexual conduct, and, as a matter of terminating the father's visiting privileges, sought the aid of appellee in evaluating appellant's conduct. After talking with Mrs. Chatman and the child, appellee wrote her attorney a letter advising that Mrs. Chatman and her child had been referred to him by Dr. Ben Lowery for the purpose of his providing assistance in determining whether or not the child (Christopher) had been sexually molested by his father, and if so, the future implications for Christopher's psychosexual development. In this letter, Dr. Millis, Jr. went into detail as to comment made to him by Christopher and concluded his letter by stating:

> "While it will be the Court's decision, and not mine, I feel that it would not be a good idea to allow Chris to continue to visit his father at all. If it is necessary that visitation rights be continued, I would strongly urge that the presence of a third person, preferably a relative, be in their presence at all times.

> "As I mentioned in our telephone conversation of April 10, 1973 I would be willing to testify in Court about my interview or the statements made in the letter above."

Thereafter, Chatman instituted suit in the Circuit Court of White County, home of Chatman, alleging both defamation of character, and malpractice against appellee. Service was had on appellee at his residence in Jackson County. Millis responded to the complaint with a special appearance and motion to quash asserting that venue in White County was improper in that appellee was neither a citizen not resident of White County, and further, was not served in White County.

On hearing, the court held no action for malpractice exists in this state against a psychologist; that even if such an action were permitted in this jurisdiction, there would have to

be a doctor - patient relationship or some similar relationship between the parties, and that the complaint in the instant litigation alleged, and counsel had admitted, that Chatman had never been examined by Millis, and in fact, was not even known to the doctor; accordingly, there could be no action for malpractice. The court then found:

"Since there is no cause of action for malpractice the only cause of action left is defamation of character the proper venue of which is not in White County the motion to quash the service of summons upon the defendant should be granted."

Appellant admits after the holding of the court that there was a lack of relationship between the parties to support the malpractice action, the complaint was correctly dismissed because of improper venue on the remaining count of defamation.

It is not necessary, in determining this litigation, to pass on the question of whether there is a cause of action in Arkansas for malpractice available against a psychological examiner or psychologist, since we are of the view that, even though such a cause of action exists, the allegations of appellant's complaint do not state a cause of action.

We do not flatly state that a cause for malpractice must be predicated upon a contractual agreement between a doctor (psychologist) and patient, but we do say that a doctor-patient relationship must exist, i.e., there must be a duty, *as a doctor*, owed from the practitioner to the patient. Under the allegations before us, Millis made no examination of Chatman; in fact, he did not even know Chatman, and had never seen him. Appellant was not a patient of Millis, and the diagnosis reached was not for the benefit of Chatman. Even if the findings of the psychologist were negligently made, Chatman did not rely upon this diagnosis to his detriment.

Of course, all persons owe a duty to refrain from defaming others, but this is simply a duty that all citizens have toward each other, and has nothing to do with a doctor-patient relationship. After all, Chatman was not damaged by

the allegedly negligent diagnosis — he was damaged by the alleged defamation. An example given by appellee appears pertinent to illustrate the point. Let us assume that a physician is engaged in lighthearted pleasure at a large cocktail party. Assume further that this physician openly refers to a non-patient individual, and by name, refers to him as a homosexual. Certainly, under these circumstances, the physician might be found to have slandered that person's character, and, if so found, held to be answerable to that person for damages sustained. However, the fact that the speaker happened to be a physician does not mean that what was said constituted malpractice.

Concisely stated, we simply reiterate that under the facts alleged, appellee owed no duty, *as a doctor,* to appellant, and this duty must be in existence before appellant can recover because of negligence, constituting malpractice.

Since we agree that, under the allegations, no action for malpractice exists, and it being admitted that the complaint was correctly dismissed because of improper venue on the defamation count, the judgment quashing the service is affirmed.

It is so ordered.

JONES, J., concurs.

BROWN and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. The peculiar manner in which the issues presented reach this court puts them in an odd perspective for proper treatment on appellate review. As I read the complaint the allegations pertinent to the issues are stated separately. The allegations relating to defamation are stated in Paragraphs I through VI. The allegations relating to negligence (or malpractice) are as follows:

## VII

Defendant at all times mentioned in the complaint was either a psychological examiner or psychologist

duly licensed under the laws of the State of Arkansas, with offices in Jackson County, Arkansas, as well as White County, Arkansas. On or about April 10, 1973, defendant diagnosed the plaintiff as a homosexual who had engaged in incestuous activities with his 1 ½ year old son and such diagnosis was disseminated to plaintiff's former wife, Robbie Chatman, and Cecil A. Tedder, Jr.

## VIII

Defendant was negligent and careless in making such diagnosis by failing to exercise the degree of skill and care, or to possess the degree of knowledge, ordinarily exercised or possessed by other psychological examiners or psychologists engaged in this type of practice in White County, Arkansas, or similar localities, in that he failed and neglected to ever interview the plaintiff and in fact did not even know him, failed to administer any diagnostic tests which would reveal any homosexuality tendencies or to use any of the proper methods that psychologists use in exercising ordinary care to protect others from injury or damage; the defendant acted in a manner willfully and wantonly in disregard to the rights of plaintiff.

## IX

As a proximate result of the negligence and carelessness of the defendant as aforesaid plaintiff suffered excruciating mental anguish, humiliation, embarrassment and will continue to do so in the future; he suffered financial injury.

This complaint was not tested by demurrer. Appellee entered a special appearance and moved the summons be quashed because venue was not properly laid in White County. The grounds stated were that the complaint alleged a cause of action based upon defamation, pointing out that appellant had alleged in Paragraph V that the publication of a letter stating appellee's findings as to appellant's conduct was defamatory per se. Appellee did not then allege and has

never contended he could not be liable for malpractice. Appellee responded in his brief here upon the sole ground that the allegations of the complaint did not show the existence of a physician-patient relationship, which was apparently a secondary basis for granting the motion to quash. If an action for malpractice was stated, then the motion to quash was not well taken, because the venue was proper. The trial court granted the motion to quash, saying (1) there can be no cause of action for malpractice against a psychological examiner or psychologist, and, (2) if there could be, the allegations of the complaint are insufficient to state a cause of action. The motion to quash was granted as pointed out in the majority opinion because "there is no cause of action for malpractice" so that the "only cause of action left is defamation of character".

I see no way we can approach this problem except by determining whether a malpractice action was brought in this case. If it was, the venue was properly laid. It seems strange, to say the least, to dispose of this matter without determining whether the trial court's primary, if not sole, basis for granting the motion to quash was sound. It obviously was not and even though appellee has insisted that this was not in issue in the case, his counsel admitted, in oral argument, that a cause of action for malpractice would lie under proper circumstances, against a psychological examiner or psychologist. This admission was certainly appropriate and consistent with the ethical standards required of a legal practitioner.

Malpractice has been defined as "Any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct". Black's Law Dictionary (4th ed.) 1111. In Arkansas, malpractice has been recognized as negligence in the practice of various professions, among which are law, medicine, and dentistry. See *Welder* v. *Mercer,* 247 Ark. 999, 448 S.W. 2d 952; *Burton* v. *Tribble,* 189 Ark. 58, 70 S.W. 2d 503; *Black* v. *Bearden,* 167 Ark. 455, 268 S.W. 27. In the last of the cited cases we held that the rules governing duties and liabilities of physicians and surgeons applied to practice of kindred branches of the healing arts. Our statutes make the practice

of psychology a profession of the healing arts. Ark. Stat. Ann. §§ 72-1501 - 1518 (Repl. 1957) deal with this profession. They provide for licensing of psychological examiners and psychologists and for suspension and revocation of licenses, for privileged communication between such a licensee and his client, and for a code of ethics governing practice and behavior. It seems so clear such a malpractice action can lie against such a practitioner as to be beyond argument. This should end this court's inquiry and serve as a basis for reversal of the order granting the motion to quash, because it is clear the pleader was asserting such a cause of action separate and distinct from the cause of action for defamation. Any defect could easily be cured by amendment when and if a demurrer or motion to make more definite and certain was filed.

The determination of the question posed in the trial court and here, i.e., propriety of the venue, can only be made by reference to the pleadings. Where venue depends upon the essential nature of the action, as it does here, resort can only be had to the complaint in deciding the question. This proposition is well stated at 92 C.J.S. 676, Venue § 6, as follows:

> *Allegations as controlling.* Under the venue statutes a plaintiff bringing a cause of action in good faith is entitled to invoke the venue that accords with the allegations of the petition, regardless of the possibility that venue may fall with the suit on plaintiff's failure to maintain the merits of the suit. To the extent that a venue statute makes the character and nature of a suit controlling with respect to its venue, the nature is determined by the facts alleged in the petition, and if more than one ground is relied on to establish venue, it is sufficient if either is shown to exist. However, it is only as to the nature of the action that the pleading is controlling; the court may not look to the petition for facts of venue, such as the residence of the parties, the place where fraud was committed, or similar facts.

See also *Eckstrand* v. *Wilshusen,* 217 Cal. 380, 18 P. 2d 931 (1933); *Pacific Air Lines, Inc.* v. *Superior Court,* 231 Cal. App. 2d

587, 42 Cal. Rptr. 68 (1965); *Davey* v. *Davey,* 77 N.M. 303, 422 P. 2d 38 (1967); *Renwar Oil Corp.* v. *Lancaster,* 154 Tex. 311, 276 S.W. 2d 774 (1955); *High* v. *Karell,* 346 S.W. 2d 920 (Tex. Civ. App., 1961); *Stuckey* v. *Stuckey,* 143 Neb. 610, 10 N.W. 2d 458 (1943).

The substance of the pleading, not the demand or prayer for relief, governs. *State* v. *Hess,* 472 S.W. 2d 362 (Mo., 1971). In determining venue, the question is what cause of action is alleged, not whether, on the merits, the plaintiff can successfully sustain the cause of action. *Leonard* v. *Carter,* 389 S.W. 2d 147 (Tex. Civ. App. 1965); *Vitopil* v. *Gray,* 111 S.W. 2d 1202 (Tex. Civ. App. 1937); *McKee* v. *McKee,* 12 S.W. 2d 849 (Tex. Civ. App. 1929). See also *Calder* v. *Third Judicial District Court,* 2 Utah 2d 309, 273 P. 2d 168, 46 ALR 2d 887 (1954).

Instead of determining the venue on the nature of the cause of action as disclosed by the complaint, the majority launches an exploration into whether appellee can recover from appellant in a malpractice action. Assuming, without conceding, that, on motion to quash, the allegations of a complaint are to be tested just as we would test evidence precisely limited to the bare words of those allegations, I thoroughly disagree with the view that a doctor-patient relationship - as it is described by the majority - is a necessary prerequisite to a recovery for malpractice by appellant. I submit that the attempt to analogize this case and this issue to cocktail party chatter is illustrative of the majority's approach to the issue and the faulty basis for its result. The dissimilarity of this example to this case should be obvious. It does not involve the professional relationship in any aspect or even remotely approach an involvement of the practice of a profession. I agree with the premise of the majority's result only in the respect that, in order for a presumably skilled professional to be liable, he must have owed a duty to the person who claims to have been injured and he must have violated that duty. Thereafter, I agree only with the conclusion that the physician at the cocktail party might be held answerable for his chatter in defamation, but not in a malpractice action. The majority's result has imported a rule of privity into malpractice actions. I consider this not only undesirable but improper.

A malpractice action, however it may be necessary to define it in order to give recognition to factors peculiar to the practice of a profession, should be considered nothing more or less than a tort action to recover damages for either willful, ignorant or negligent misconduct of a practitioner in the practice of his profession. See Introduction, Chapter 15, AMI, Civil (2d); Black's Law Dictionary (4th Ed.) p. 1211; 54 CJS 1111, Malpractice; Note on Use, AMI 1501, AMI, Civil (2d), p. 177. The appropriate standards are set out in AMI, Civil, 1501. Under that instruction, any practitioner (including appellee and others in his field) would be required to possess and, using his best judgment, apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing engaged in the same type of practice in the locality in which he practices or in a similar locality; otherwise he is guilty of negligence.

Still, when boiled down to its essentials, this definition of malpractice states precisely the duty owed by a practitioner of a profession, the violation of which renders him liable for negligence. But it is now almost universally recognized, as Mr. Justice (then Judge) Cardozo phrased it in *Palsgraph* v. *Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), there can be no "negligence in the air". *Hill* v. *Wilson*, 216 Ark. 179, 224 S.W. 2d 797; *Haralson, Adm'x.* v. *Jones Truck Line*, 223 Ark. 813, 270 S.W. 2d 892. Dr. Leflar defined negligence, in light of the concept that "negligence in the air" is non-existent. That definition (which should be applied here) reads:

****In other words, a negligent act is one from which an ordinary prudent person in the actor's position - in the same or similar circumstances - would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner.

We repeated and applied this definition in *Haralson, Adm'x.* v. *Jones Truck Line*, supra.

In other words, there can be no actionable negligence, unless the actor has violated a duty he owed the victim of his

act or omission. Prosser, Law of Torts (4th ed.) 244, § 42. The question then becomes "To whom does the practitioner owe a duty?" Actionable negligence must arise from violation of a duty imposed upon the actor by common law, by statute or by contract. 57 Am. Jur. 2d 380, 382, Negligence §§ 33, 36; 65 CJS. 453, Negligence § 1 (12); 65 CJS. 485, 487, 494, Negligence §§ 4 (2), 4 (3), 4 (6). Judge Cardozo said that negligence was a matter of relationship between the parties which must be founded upon the foreseeability of harm to the person in fact injured. See also, Prosser, Law of Torts (4th ed.) p. 255, § 43; 2 Harper & James, The Law of Torts, p. 1018, § 18.2 (1956). "Duty" is determined by answering the question whether the defendant is under any obligation for the benefit of the other party. Prosser, Law of Torts, p. 324, § 53. Prof. Prosser's concept of "duty" fits Dr. Leflar's definition of negligent act quite well. Prof. Prosser says:

> *** No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.

The "foreseeability" test is not new to Arkansas law. It was applied in *Chapman Chemical Co.* v. *Taylor*, 215 Ark. 630, 222 S.W. 2d 820, in 1949. The application by this court of the test of actionable negligence by foreseeability of harm to the person injured was treated by Senior District Judge John E. Miller with his usual thoroughness in *Ozark Industries, Inc.* v. *Stubbs Transports, Inc.*, 351 F. Supp. 351 (D.C. Ark. 1972). A review of this excellent opinion should leave no doubt about our adherence to this concept. In another excellent treatment of the subject, Chief Judge Henley has demonstrated that Arkansas cases hold that a duty to use care arises when it is reasonably foreseeeable that injury will probably result to another if care is not used and that it depends upon the foreseeability of injury or damage, not upon privity of contract. *Rhoads* v. *Service Machinery Company*, 329 F. Supp. 367 (D.C. Ark. 1971).

The test of actionable negligence, insofar as "duty" is concerned, becomes one of foreseeability, i.e., whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to the person seeking recovery (either

individually or as a member of a class). *Palsgraf* v. *Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). Prosser, Law of Torts (4th ed.) p. 324, § 53; 57 Am. Jur. 2d 408, Negligence § 58. See *Haralson Adm'x.* v. *Jones Truck Line,* 223 Ark. 813, 270 S.W. 2d 892. In making the determination, "foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful man would take account of it in guiding practical conduct." 2 Harper & James, The Law of Torts, p. 1020, § 18.2.

The Maryland Court of Appeals treated the question whether a physician giving certification to a hospital for the insane, that a plaintiff was mentally deficient, owed any duty to the plaintiff in *Miller* v. *West,* 165 Md. 245, 167 A 696 (1933). That court said that the weight of authority, in states having similar statutory proceedings, seemed to " *** support the view that the physicians, although they are not employed by the patient, and make no report to him, are under a legal duty to him which will support an action, if the duty is violated, and if as a consequence a person who should not be confined is confined."

In rejecting the argument that a doctor-patient relationship was essential to a recovery for negligence in such case, the court in *Kleber* v. *Stevens,* 39 Misc. 2d 712, 241 N.Y.S. 2d 497 (1963) quoted extensively from *Ayers* v. *Russell,* 50 Hun. 282, 288 289, 3 N.Y.S. 338, 340, 341 (1888). A part of that quotation follows:

> *** The physicians followed the forms of the law. Whether the reasons set forth by them in the certificate for their conclusion that the plaintiff was insane were sufficient or not, is immaterial. The presumption is that they set forth such reasons as in their opinion were sufficient, and such as appeared to them to be true in fact. But the complaint charges that the physicians made the certificate 'without proper and ordinary care and prudence, and without due examination, inquiry, and proof into the fact whether plaintiff was sane or insane.' We think the physicians owed the plaintiff the duty of making the examination with ordinary care. Their duty

must be measured by the trust which the statute reposes in them, and by the consequences flowing from its improper performance. They assume the duty by accepting the trust. They are not judicial officers, but medical experts. They are not clothed with judicial immunity and are chargeable with that negligence which attaches to a professional expert who does not use the care and skill which his profession, per se, implies that he will bring to his professional work.

Appropriately the court added:

*** It was plaintiff's contention throughout the trial that the certificates rendered in compliance to this section were ill-conceived and based on the hearsay of an allegedly vindictive husband rather than good medical practice and examination, and it is conceivable that a doctor examining for purposes of commitment may comply mechanically with the requirements of the law and without malice and yet fail to utilize the minimal skill required to effectuate this process.

A closely analogous case applying the principles I feel should be applied here is *Harriott v. Plimpton,* 166 Mass. 585, 44 N.E. 992 (1896). In that case, Harriott was engaged to be married to the daughter of Morrill, who took him to the office of a physician named Plimpton, who examined Harriott and told both Harriott and Morrill that Harriott had gonorrhea. As a result, the marriage engagement was broken. Harriott brought suit against Morrill for slander and Plimpton for slander and negligence in making the examination. The jury found that Harriott did not have gonorrhea and that neither Morrill nor Plimpton was actuated by express malice. The presiding judge directed a verdict for the physician. The Supreme Judicial Court of Massachusetts said:

The verdict in the action for negligence must be set aside. The evidence tended to show that the defendant was employed by Morrill. Having undertaken, for compensation to be paid by another, to examine the plaintiff, and to report whether he was diseased, the defendant was bound to have the ordinary skill and learning

of a physician, and to exercise ordinary diligence and care; and if he failed, and the plaintiff was injured because of his want of such skill and learning or his want of such care, the defendant was answerable to him in damages. See *Gill* v. *Middleton*, 105 Mass. 479; *Higgins* v. *McCabe*, 126 Mass. 13; *Small* v. *Howard*, 128 Mass. 131; *Mallen* v. *Boynton*, 132 Mass. 443. In our opinion, the fact that the purpose of the examination was information, and not medical treatment, is immaterial; and the breaking of the plaintiff's marriage engagement, in consequence of the wrong diagnosis, was not too remote a damage to sustain the action. Upon the evidence, it was for the jury to say whether the defendant used ordinary care, learning, and diligence.

The "privity requirement" was gasping its last breath in Arkansas prior to today's decision. This court clearly recognized its illness and foresaw its demise in *Chapman Chemical Co.* v. *Taylor*, 215 Ark. 630, 222 S.W. 2d 820, saying:

It is said there was no privity of contract between the Chemical Co. and cross appellants. This showing was at one time, and for some time considered necessary to occasion liability, the line of decisions to that effect going back to the early English case of *Winterbottom* v. *Wright*, 10 Mees. & W. 109, 152 Eng. Reprint 402, decided in 1842. But the courts have been getting away from that doctrine and many have entirely repudiated it and discarded it. The opinion of Justice Cardozo, then a member of the Court of Appeals of New York, and later an Associate Justice of the United States Supreme Court in the case of *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916 F, 696, Ann. Cas. 1916C, 446, is credited with the inception of the modern doctrine of manufacturer's liability based upon foreseeability rather than privity of contract.

The Supreme Court of Massachusetts in the case of *Carter* v. *Yardley & Co.*, 319 Mass. 92, 64 N.E. 2d 693, 700, annotated in 164 A.L.R. 559, expressly repudiates the privity contract rule and stated that the MacPherson case, supra, was now generally accepted and the sum-

mary of the Mass. case and others there cited in that "The question in each case was whether the danger was sufficient to require the manufacturer to guard against it." In other words, that foreseeability and not privity was the proper test. See also Sec. 824, Chapter on Sales, Sec. 824, 46 Am. Jur. page 946.

Thus we used the "foreseeability" test as a vehicle for elimination of the privity requirement in the context of that case. See, *Green* v. *Equitable Powder Mfg. Co.,* 94 F.S. 126 (D.C. Ark. 1950).

It is significant that we were able to find negligence in the gratuitous act of one truck driver giving a passing signal to another, whose truck struck and killed a pedestrian, whose administratrix sued both and their employers. We said:

Nor does it matter that Fulfer was under no legal duty to give any signal at all. As Judge Cardozo observed in the leading case of *Glanzer* v. *Shepard,* 233 N.Y. 236, 135 N.E. 275, 276, 23 A.L.R. 1425: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Even though Fulfer's invitation to Duvall was gratuitous the law required that his conduct be characterized by ordinary care.

The "privity" test seems to have yielded to foreseeability in many similar situations. One of them involves the question of liability of an attorney-scrivener engaged by a testator to an intended beneficiary who is frustrated by the invalidity of a will. See 7 Am. Jur. 2d 162, Attorneys at Law, § 199. In 1961, the Supreme Court of California overruled a previous holding in order to lay to rest the "privity" test previously utilized in such a case. *Lucas* v. *Hamm,* 15 Cal. Rptr. 821, 364 P. 2d 685 (1961).

In stating the appropriate test, the court adverted to a previously stated rule, saying:

....In restating the rule it was said that the determination whether in a specific case the defendant will be held

'liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm.

For other cases in which it has been held that an attorney may be liable to one other than his client in a tort action, see *Hoppe* v. *Klapperich*, 224 Minn. 224, 28 N.W. 2d 780, 173 ALR. 819 (1947); or other action, *Higgins* v. *Russo*, 72 Conn. 238, 43 A 1050 (1899).

An annotator has said: "But the privity of contract principle has been the subject of increasing criticism from the courts in recent years. It has been so overlaid with exceptions that, as has been said in another connotation, the exceptions 'have almost, if not completely, swallowed up the so-called "rule".' Many courts have come to the verge of repudiating the privity of contract doctrine in toto." See Annot. 65 ALR 2d 1363, 1364 (1959).

Of course, the requirement of privity in actions for breach of warranty in sales of goods was abolished in Arkansas by legislative action. Act 35 of 1965 [Ark. Stat. Ann. §§ 85-2-318.1 - 318.3. (Supp. 1973)]. It seems to me that the public policy of Arkansas is clearly opposed to the privity requirement where one person suffers as a result of the failure of another to use reasonable care. We should not resurrect the "privity" doctrine by imposing it where we have never imposed it before.

The allegations in this case are that appellant was damaged by appellee's failure to exercise the requisite degree of skill in making a psychological diagnosis of appellant. Such diagnoses are certainly within the scope of appellee's practice. Assuming the allegations of the complaint to be true, as we must, it would border on absurdity to say that appellee could not reasonably have foreseen that a misdiagnosis of homosexuality would harm appellant. The fact that the

diagnosis was made without appellee's having known, seen or interviewed appellant or having administered any tests to him would seem, in and of itself, to be malpractice, but whether it is or not is a matter of evidence when the case is tried on its merits. It certainly is a sufficient allegation to state a cause of action. As a matter of fact, the only flaw the majority perceives in the complaint is the fact that Chatham was not a patient of Mills. I submit that reason and logic do not support the majority opinion. I would remand this case for further proceedings.

I am authorized to state that Mr. Justice Brown joins in this dissent.