[Civ. No. 40365. Second Dist., Div. Two. Apr. 11, 1973.]

MARY MARGARET RAINER, Plaintiff and Appellant, v.
MORTON I. GROSSMAN, Defendant and Respondent.

540

**COUNSEL**

Lillian Finan, Edward L. Lascher and Richard E. Rader for Plaintiff and Appellant.

Fred S. Lack, Jr., Samuel E. Ericsson and Overton, Lyman & Prince for Defendant and Respondent.

## OPINION

**COMPTON, J.**—Plaintiff appeals from a summary judgment entered in favor of Dr. Morton I. Grossman, one of several doctors joined as defendants in a complaint alleging medical malpractice in connection with a surgical operation performed on plaintiff on June 20, 1960, and seven subsequent operations from February 28, 1962, and including September 4, 1962.

Prior to instituting this action, plaintiff on February 27, 1963, commenced a malpractice action in the Superior Court of Ventura County (hereafter Ventura case) against the Buena Memorial Hospital where the surgery was performed and a number of doctors, most of whom are also named as defendants in this action. Dr. Grossman, however, was not a defendant in that action.

With one relatively minor exception, a jury in that case found in favor of all defendants on each of the various theories of recovery. Judgment was entered April 5, 1968, and plaintiff appealed. (See *Rainer v. Community Memorial Hosp.*, 18 Cal.App.3d 240 [95 Cal.Rptr. 901], filed June 21, 1971, for a description of the facts surrounding the surgery which was performed on plaintiff.)

In the Ventura case one of plaintiff's theories of recovery was that Dr. David Fainer (named as defendant in both cases) negligently advised plaintiff as to the need for surgery. At the trial Dr. Grossman appeared as an expert witness and opined that under the circumstances of plaintiff's condition surgery was properly recommended. As noted, judgment was in favor of Dr. Fainer.

The present action, based on additional theories of recovery, was filed in the Superior Court of Los Angeles County on July 9, 1968, the complaint alleging in essence that Dr. Grossman (hereafter defendant) was a specialist who served as a "consultant" with Dr. Fainer prior to plaintiff's surgery and that he negligently recommended surgery which was in fact unnecessary. The claimed negligence rests on his failure to examine plaintiff and amass sufficient information prior to making his recommendation.

In an apparent effort to avoid the application of the doctrine of res judicata or collateral estoppel, plaintiff has embellished her complaint with allegations that defendant knew that Dr. Fainer would rely on his recommendations and that Dr. Fainer did in fact rely on them.

Of course, the procedure for summary judgment is to permit the

court to pierce the allegations in the pleadings to ascertain whether a genuine cause of action exists or whether the complaint is simply the product of artful pleading. (*Property Controllers, Inc.* v. *Shewfelt,* 245 Cal.App.2d 755 [54 Cal.Rptr. 218].)

Thus we examine the papers offered in connection with the motion for summary judgment to determine if the facts would support a judgment for defendant and negate the existence of a triable issue. (*Leggett* v. *Di Giorgio Corp.,* 276 Cal.App.2d 306 [80 Cal.Rptr. 697].)

Here the defendant's moving papers consisted principally of (1) the opinion of the Court of Appeal in the Ventura case; (2) a deposition of defendant taken in connection with the Ventura case; (3) a transcript of defendant's testimony in the Ventura case; (4) a transcript of Dr. Fainer's testimony in the Ventura case; and (5) an affidavit by defendant. Plaintiff's opposition consists of a declaration by her counsel which is nothing more than an argument based on her interpretation of the evidence and presents no factual material.

Defendant, in his affidavit, states flatly that he never at any time met, saw or treated plaintiff for any condition and that he had not been called in "consultation" by any doctor concerning the care or treatment of plaintiff.

The uncontroverted testimony of defendant and Dr. Fainer in the Ventura case in summary is as follows:

Defendant is a physician and surgeon specializing in gastroenterology. He is a professor of medicine teaching in his specialty at the U.C.L.A. Medical School. Sometime in 1960, he was invited to lecture to a group of some 20 to 50 physicians at a medical education meeting at the Ventura General Hospital. The session lasted approximately an hour, during which various cases and X-rays were presented for discussion.

Dr. Fainer, who at the time was treating plaintiff for a condition described as ulcerative colitis, without mentioning her name, presented the facts of plaintiff's history together with X-rays. Defendant gave an opinion that in such a case surgery was indicated. This opinion was shared by most of the physicians present at the meeting. Subsequently, Dr. Fainer made his recommendation to plaintiff and surgery followed.

■ A necessary element of any cause of action for negligence is, of course, the existence of a duty of care which defendant owed to the plaintiff. (*Routh* v. *Quinn,* 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215].) The existence of such a duty is a question of law. (*Amaya* v. *Home Ice, Fuel &*

*Supply Co.,* 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513]; *Starr* v. *Mooslin,* 14 Cal.App.3d 988 [92 Cal.Rptr. 583].)

In the usual case of medical malpractice the duty of care springs from the physician-patient relationship which is basically one of contract. (*Agnew* v. *Parks,* 172 Cal.App.2d 756, 764 [343 P.2d 118].) It is clear that the imposition on defendant of a duty of care to plaintiff here cannot rest on the physician-patient relationship. There was none.

However, as was observed in *McGarvey* v. *Pacific Gas & Elec. Co.,* 18 Cal.App.3d 555, 561-562 [95 Cal.Rptr. 894]: "Our Supreme Court, . . . has on a 'case-by-case basis' [citation] blazed new trails in fields in which new or rediscovered duties of care have been asserted—e.g., in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] (liability of manufacturers for defective design of products); *Dillon* v. *Legg, supra* [68 Cal.2d 728 (69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316)] (extension of liability of a tortfeasor who injures a child to encompass limited liability for its parent's resultant mental-physical illness); *Rowland* v. *Christian, supra,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] (abolishing rigid and illogical distinctions relating to a land occupant's liability based upon plaintiff's status as trespasser, invitee or licensee)."

However, the facts before us bearing on the connection between defendant's conduct and plaintiff's alleged injury, which are not in dispute, do not call for "blazing a new trail."

As a teacher of doctors, defendant used as a teaching vehicle cases presented to him by his pupils. It is conceded that his opinion became part of the total information upon which one of those pupils, Dr. Fainer, drew in giving advice to his patient.

Presumably every professor or instructor in a professional school hopes, expects or foresees that his students will absorb and apply in their own careers at least some of the information he imparts. Does he thereby assume a duty of care and potential liability to those persons who may ultimately become the clients or patients of those students? We think not.

The following oft-quoted language from *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358], provides the yardstick for resolving the case at bench: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect

the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (Also see *Merrill* v. *Buck,* 58 Cal.2d 552 [25 Cal.Rptr. 456, 375 P.2d 304]; *Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295.) *Raymond* v. *Paradise Unified School Dist.,* 218 Cal.App.2d 1 [31 Cal.Rptr. 847], suggested some additional considerations, i.e., (1) the social utility of the activity causing the injury compared with the risks involved in its conduct; (2) the kind of a person with whom the actor is dealing; (3) the workability of a rule of care especially in terms of the parties' relative ability to adopt practical means of preventing injury; (4) the prophylactic effect of a rule of liability.

 This case fails on all counts to call for the imposition on defendant of a duty to plaintiff. There is no suggestion that defendant's conduct was morally blameworthy. The continuing education of its members by the medical profession and the exchange of information between doctors is of great social benefit. The so-called "case method" of instruction is an excellent vehicle for such purposes, a method which would become unwieldy if the expert were required to personally examine the patient and in effect accept the patient as his own prior to embarking on any discussion of the case.

Defendant here was dealing with medical doctors who were not under his direction or control. He was entitled to assume that these doctors were cognizant of the circumstances under which the various cases were discussed, i.e., without defendant having personally examined the patient, and would themselves in dealing directly with their patients rely on their own ultimate opinions following proper medical procedures. Imposition of liability under these circumstances would not be prophylactic but instead counter-productive by stifling efforts at improving medical knowledge.

Plaintiff claims that support for her position is to be found in *Vesely* v. *Sager,* 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], where a vendor of alcoholic beverages whose intoxicated customer injured a third party was held to owe a duty to that third party as a member of the public and *Heyer* v. *Flaig,* 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], where a lawyer who negligently drafted a will for a client was held to owe a duty to a beneficiary who thereby suffered damage. Neither case is of comfort to plaintiff.

The duty in *Vesely* was based upon a penal statute enacted for the protection of the public. In *Heyer,* at page 228, the court simply applied the

*Biakanja* criteria and reiterated the rule that "liability *may* flow from relationships which are not expressed by contract between the parties, not in 'privity' with each other, and that such duty *could* emanate from the policy considerations [set forth in *Biakanja*]." (Italics added.)

In balancing the various factors it is our conclusion that public policy considerations militate against establishing any duty in this case.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied May 9, 1973, and appellant's petition for a hearing by the Supreme Court was denied June 7, 1973.