[Civ. No. 14659. Fourth Dist., Div. One. Apr. 25, 1977.]

CHARLES I. KEENE, Plaintiff and Appellant, v.
HOWELL E. WIGGINS, Defendant and Respondent.

**COUNSEL**

Butler & Schroeder, Irwin L. Schroeder and Edgar H. Hayden, Jr., for Plaintiff and Appellant.

Holt, Rhoades & Hollywood, John S. Rhoades and Dan H. Deuprey for Defendant and Respondent.

**OPINION**

**COLOGNE, J.**—Charles I. Keene filed a complaint charging Howell E. Wiggins, M.D., and others, with medical malpractice. On June 24, 1975, Dr. Wiggins filed a motion to strike the complaint and submitted appropriate declarations. Counterdeclarations were also filed. The motion to strike was granted and summary judgment entered in favor of Wiggins. Keene appeals.

On November 22, 1972, Keene received injuries admittedly compensable by his employer under workers' compensation. He was later admitted to Palomar Memorial Hospital and treated by Rollin E. Weber, M.D., for "old operative adhesions and arachnoiditis" and released. In January 1973 he was readmitted to the hospital where he underwent surgery for a laminectomy. Following surgery he had chills, fever, nausea, and experienced low back pain radiating into his right leg. The

condition persisted and at the request of Industrial Indemnity, the employer's workers' compensation carrier, various medical consultants were called in to verify the need for further surgery. In July 1973 he was rescheduled for surgery by Leland C. Brannon and Rollin E. Weber but on consultation of the surgeons this operation was cancelled.

Keene called Joe Moore of Industrial Indemnity to discuss the problem and request further treatment, provide surgical repair and try to relieve the pain. Keene was sent to Rollin E. Weber, Leland C. Brannon and James E. Lasry for examination. He was advised these examinations were not satisfactory and, as stated in his declaration, he "needed another examination to determine whether . . . [he] was in need of further treatment. [He] was sent for said examination to the defendant, HOWELL E. WIGGINS, M.D."

Industrial Indemnity wrote Wiggins and asked him to examine Keene, review the entire record giving Industrial Indemnity his opinion as to what the permanent disability was at that time and what it might be should Keene undergo surgery.

Wiggins wrote Industrial Indemnity Keene had arachnoiditis not amenable to surgery and recommended no further medical treatment or surgery. Keene received a copy of that report[1] and asserts he relied on it to his detriment.

In his motion to strike, Dr. Wiggins asserts he was conducting an examination solely for the purpose of rating the injury to settle the claim and not for care or treatment; there is no physician-patient relationship and hence no duty was owed.

■ A motion to strike the pleadings and enter summary judgment shall be granted only when there is no triable issue of material fact (Code Civ. Proc., § 437c). Any doubt as to the granting of summary judgment must be resolved against the moving party (*Pasadena City Fire Fighters Assn.* v. *Board of Directors,* 36 Cal.App.3d 901, 906 [112 Cal.Rptr. 56]). ■ Though declarations will be liberally construed to disclose evidence supporting a cause of action or possible defense, counter-declarations must raise such an issue or summary judgment is appropriate (Code Civ. Proc., § 437c; *Loma Portal Civic Club* v. *American Airlines, Inc.,* 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548]). It is with these precepts in mind we turn to the issues raised by the pleadings.

---

[1]Labor Code section 4055 requires the employee be sent a copy of the report.

■ An essential element of Keene's suit alleging medical malpractice on the part of Dr. Wiggins was the establishment of a duty owed to him by the physician (*Rainer* v. *Grossman*, 31 Cal.App.3d 539, 542-543 [107 Cal.Rptr. 469]; see also *Stafford* v. *Shultz*, 42 Cal.2d 767, 774 [270 P.2d 1]).

The determination of duty is primarily a question of law (*Weirum* v. *RKO General, Inc.*, 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]). The fundamental principle is all persons are required to use ordinary care to prevent others being injured as a result of their conduct (Civ. Code, § 1714; *Rowland* v. *Christian*, 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]) and any departure from this principle involves the balancing of a number of considerations, namely:

(a) the foreseeability of harm to the plaintiff;

(b) the degree of certainty the plaintiff suffered injury;

(c) the closeness of the connection between the defendant's conduct and the injury suffered;

(d) the moral blame attached to the defendant's conduct;

(e) the policy of preventing future harm;

(f) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and

(g) the availability, cost, and prevalence of insurance for the risk involved (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 113).

*Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358], adds to these factors in the balancing process consideration of the extent to which the transaction was intended to affect the plaintiff. ■ As a general principle a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous (*Tarasoff* v. *Regents of University of California,* 17 Cal.3d 425, 434-435 [131 Cal.Rptr. 14, 551 P.2d 334]).

In the final analysis it is the court's expression of the sum total of those conditions of policy which lead the law to say that a particular plaintiff is entitled to protection (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d 40, 46; Prosser, Law of Torts (4th ed. 1971) pp. 325-326).

When the physician-patient relationship exists, either expressed or implied, the patient has a right to expect the physician will care for and treat him with proper professional skills and will exercise reasonable and ordinary care and diligence toward the patient (*Rasmussen* v. *Shickle,* 4 Cal.App.2d 426, 429-430 [41 P.2d 184]). This does not suggest, however, a doctor is required to exercise the same degree of skill toward every person he sees. The duty he owes to each varies with the relationship of the parties, the foreseeability of injury or harm that may be expected to flow from his conduct and the reliance which the person may reasonably be expected to place on the opinion received. A case-by-case approach is required.

It is well established by authorities in other states the physician is liable for malpractice or negligence only where there is a relationship of physician-patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill and there is a breach of professional duty to the patient (*Hoover* v. *Williamson,* 236 Md..250 [203 A.2d 861, 10 A.L.R.3d 1064]). Whether any such duty may result when the physician examines the person not as a part or for the purpose of medical treatment is discussed in 10 A.L.R.3d 1071.[2] The authorities reported there uniformly hold that where no physician-patient relationship exists the doctor's only duty is to conduct the examination in a manner not to cause harm to the person being examined. The physician acts as an agent of the person requesting the examination (see *Layton* v. *New York Life Ins. Co.,* 55 Cal.App. 202 [202 P. 958]) and absent special circumstances, his duty to observe good standards of professional skill in reporting the results of the examination runs only to the person employing him.[3] In California, however, the courts have not used status alone as a means of determining liability (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 119).

█ In applying the standards called for by *Rowland* v. *Christian, supra,* 69 Cal.2d 108, and its progeny, it is apparent where a doctor

[2]See 69 A.L.R.2d 1213 for a discussion of the employer's liability for failure to inform an employee of a disease or physical condition disclosed by a medical examination conducted by or for the employer.

[3]See 94 A.L.R.2d 1389 for physician's status as agent of the company when examining applicant for insurance.

conducts an examination of an injured employee solely for the purpose of rating the injury for the employer's insurance carrier in a workers' compensation proceeding, neither offers or intends to treat, care for or otherwise benefit the person examined, and has no reason to believe the person examined will rely on this report, the doctor is not liable to the person being examined for negligence in making that report. His duty to observe a professional standard of care in the preparation of that report runs only to the carrier and to the employer requesting it.

Measured against any standard of foreseeability, the physician, as here, hired solely to conduct an examination for purposes of rating disability compensation benefits, could not reasonably expect the claimant to rely on his opinion. Such a report is initiated by, arranged for and forwarded directly to Industrial Indemnity for the carrier's own best interests. The person under examination is seeking benefits from the employer's carrier and is pursuing a claim adverse to the interests of the employer. While the law expects the physician to be objective in these matters, and there is nothing to suggest that Dr. Wiggins is anything other than objective in this case, it is common knowledge there are claimant's doctors and insurance company doctors and the claimant cannot assume the insurance company's physician will be as generous as his own physician when assessing the injury to be rated. If it is a matter of opinion, the claimant should not expect the most advantageous conclusions. That expectation would be altered, of course, if the carrier's physician treats the claimant or otherwise seeks to provide a benefit; that situation is not presented here. The physician who engages in any substantial amount of workers' compensation rating work may be aware of the fact the carrier must furnish the claimant with a copy of all medical reports (See Lab. Code, § 4055), but in that event he must also reasonably expect from the adversary nature of the proceedings the claimant would not rely on it (see Cal. Workmen's Compensation Practice (Cont.Ed.Bar) § 7.13, pp. 206-207, § 7.21, p. 212). In the absence of special factors justifying reliance it is not foreseeable a claimant in a workers' compensation case would, without question, accept and rely upon medical reports of the employer's insurance carrier. This is at least true where the examining physician is not the treating physician approved by the patient and is used by the carrier solely to assess the value of the claim where the parties will be dealing at arm's length. Reliance is even less likely where the employee has expressed dissatisfaction with the benefits then being offered by the employer's carrier. In view of the adverse relationship with the person being examined, the doctor's conduct is not morally blameworthy.

The merit of this position finds support in *Goodman* v. *Kennedy,* 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737]. In that case the court was faced with an attorney who negligently advised his client that shares of corporate stock could be issued as stock dividends and sold to third persons without jeopardizing the previously granted exemption from the requirement of registering the corporation's stock. The Supreme Court held the attorney's duty of care in giving legal advice to his client did not extend to the plaintiffs with whom the client, in acting upon the advice, dealt at arm's length, in the absence of any showing that the legal advice was foreseeably transmitted to or relied on by the plaintiffs, or that the plaintiffs were intended beneficiaries of a transaction to which the advice pertained.

In *Goodman,* the court reaffirmed a finding of privity was not essential (see *Biakanja* v. *Irving, supra,* 49 Cal.2d 647). The attorney's duty runs to the client and those who might be expected to rely on his opinion. The court in *Goodman* said: "To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' [citation]. The result would be both 'an undue burden on the profession' [citation] and a diminution in the quality of the legal services received by the client. [Citation.]" (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 344.) This rule has been affirmed in *Parnell* v. *Smart,* 66 Cal.App.3d 833, 837 [136 Cal.Rptr. 246].

While *Goodman, supra,* may be distinguishable in that there was no allegation of communication or reliance, the key factor is whether the advice was given with the *intent* it should be relied on by the third person (see *Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 343, fn. 4). In *Parnell* the court placed emphasis on the failure to show intent to confer a benefit on the claimant (*Parnell* v. *Smart, supra,* 66 Cal.App.3d 833, 838).

Here we find no physician-patient relationship, express or implied, of the sort giving rise to a duty of care owed to Keene in connection with the report. The uncontradicted declarations assert Keene went to Wiggins' office at the request of the carrier for "examination." Keene

was present because he was required to submit to examination as a claimant. There is no assertion Wiggins did anything more than examine Keene and make his report to Industrial Indemnity as he was hired to do. The carrier requested this examination to verify the opinions of the other consulting doctors who had stated no operation or treatment was called for and to rate the disability. The Wiggins' opinion was needed to properly rate the case for settlement of Keene's claim (see Lab. Code, § 4600); as such the opinion was solely for the carrier's benefit in the adversary workers' compensation proceedings. None of the declarations suggest Wiggins' examination was part of Keene's care or treatment; nor do they suggest Wiggins voluntarily offered Keene any advice and counsel or otherwise intended to benefit Keene personally.[4]

Under the standards expressed in *Biakanja, supra,* and *Goodman, supra,* we must affirm the holding of the trial court that on the basis of the declarations, Wiggins owed Keene no duty of professional skill in connection with the report. Wiggins' alleged failure to advise Keene of some medical condition did not give rise to a cause of action under the circumstances of this case. Summary judgment was properly granted.[5]

Judgment affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied May 12, 1977, and appellant's petition for a hearing by the Supreme Court was denied June 27, 1977. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.

---

[4]Had Wiggins volunteered care or treatment or otherwise attempted to serve or benefit Keene in a direct manner, we would undoubtedly find a duty running to Keene (see Rest.2d Torts, § 323). Wiggins' declaration specially negated any such service or benefit and that fact was not controverted by Keene.

[5]We are not called upon to determine the liability of the employer to the claimant (see *Coffee* v. *McDonnell-Douglas Corp.,* 8 Cal.3d 551 [105 Cal.Rptr. 358, 503 P.2d 1366]), nor the liability of the physician or insurance adjustor who attempts to treat the person being examined (*Fitzpatrick* v. *Fidelity & Casualty Co.,* 7 Cal.2d 230 [60 P.2d 276]). Reliance on these cases is misplaced since they do not involve the physician's liability to the person examined for a negligent report.