197 N.J. Super. 266 (1984)
484 A.2d 1253
GERALD J. RYANS, PLAINTIFF-APPELLANT,
v.
EDWARD LOWELL, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 21, 1984.
Decided October 23, 1984.
*269 Before Judges FRITZ and DEIGHAN.
Vincent E. Halleran, Jr., attorney for appellant.
Shanley & Fisher attorneys for respondent (Thomas J. Alworth, of counsel; Wanda M. Akin, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
In this action plaintiff Gerald J. Ryans, alleges defendant Edward Lowell, M.D., a psychiatrist, made an improper diagnosis of plaintiff's condition by failing to examine the plaintiff and then making recommendations to the New Jersey Commission for Blind and Visually Impaired (Commission). Plaintiff contends that as a result of these recommendations, plaintiff's benefits from the Commission were terminated. Plaintiff appeals from a summary judgment in favor of defendant dismissing the complaint. We affirm.
Gerald Ryans had been a client of the Commission for many years having received numerous benefits including vocational training. Defendant is a psychiatrist retained by the Commission on a fee basis as a medical consultant. In August 1980, apparently in response to an application by plaintiff for further benefits, the Commission requested defendant to review the file of plaintiff for an evaluation. After his review of the file, defendant on August 6, 1980 prepared a handwritten memorandum as follows:
FROM: Dr. Lowell
SUBJECT: GERALD RYANS
I have overseen this C's case for a decade now. Clearly he is not FEASIBLE for REHABILITATION and the case should be closed as such. ALL data supports this; events have supported the data. Being intimidated by C, capitulating to his demands, manipulations, etc merely and malignantly feed his "act".
PAG felt him to be psychotic years ago.

*270 PSYCHIATRIC opinion is: close out as (illegible) rehab ... immediately.
Case has chance  a declaredly remote chance of being re-opened IF meets both, not either of 2 requirements.
viz; (1) He allow, authorize and permit full disclosure of all pertinent (we determine this) data regarding his medical (illegible) state, including & especially psychiatric treatments, examinations & HOSPITALIZATIONS.
(2) He agree NOW to having psychiatric evaluation IF that is DETERMINED APPROPRIATE AFTER #(1) COMPLETED.
(3) He comply with rules, regulations, policies & practices of N.J.C.B. & not operate outside of channels.
Capitulation to his machinations is counter productive, counter rehabilitative, counter-therapeutic  and unconscionable squandering futilely of Commission funds.
This report was placed in plaintiff's file with other documents and was subsequently brought to the attention of Norma F. Krajczar, Executive Director of the Commission.
On August 15, 1980 Mrs. Krajczar sent a letter to plaintiff outlining the conditions required of plaintiff by the Commission for the continuance of benefits. These conditions reflected the conditions recommended by defendant. Receiving no response from plaintiff, on October 28, 1980 she again wrote to plaintiff concerning the conditions set forth in her letter of August 15.
On January 13, 1981 plaintiff finally met with Mrs. Krajczar to clarify the position of the Commission concerning the conditions under which plaintiff would continue to be eligible for benefits. On January 20, 1981 Mrs. Krajczar wrote to plaintiff and outlined those conditions.
Following are the conclusions of our conference which I noted in braille and presented to you for your concurrence:
1. We have reworked the conditions which we presented to you in our letter of August 15, have consolidated them from three (1) [sic] points to one (1). That condition is as follows:
It will be necessary for you to sign a release form which will give us the opportunity to obtain all medical and psychiatric records related to your medical history. Depending upon the records we receive, we may or may not wish to request a further psychiatric evaluation for you which, of course, will be paid for by the Vocational Rehabilitation Department. Determination of the necessity for such an evaluation will be made by Dr. Lowell, our Consulting Psychiatrist. Should it be determined that we can continue to serve you in our Vocational Rehabilitation program we will insist that you comply with all procedures determined by you and our staff to be appropriate *271 for this service. If you determine that you cannot cooperate in this fashion and under these guidelines, then it will be impossible for us to continue service and we shall have to terminate you from our Vocational Rehabilitation program.
2. You will sign a release form which Mrs. Hefferon will provide for you and which will specifically indicate that its only use is for us to secure records from Dr. Bertrans.
3. This letter will represent a directive in your case file that no release of information concerning yourself or your case will be provided by the Commission to anyone or any agency without your specific awareness and/or approval. You understand that we are mandated to provide information to certain agencies such as Social Security; however, should we be required to provide such agencies with information, you are to be notified that we have done so. I shall personally see to it that all relevant staff of the agency are aware of this directive.
4. The final conclusion of our meeting was my agreement to take specific note of the fact that you continue to view your employment goal as "travel representative." We will share this fact with Mrs. Hefferon.
Plaintiff did not respond to the letter of January 20, 1981 until September 1981 when he spoke with Mrs. Krajczar with reference to "opening" or "closing" his file. She advised him that Vocational Rehabilitation Services could no longer be provided until eligibility had been redetermined. Plaintiff was advised that unless he communicated with the Commission on or before October 1, 1981 his file would be closed. Plaintiff did not respond and on October 15, 1981, plaintiff's file was closed for "failure to cooperate."
At her deposition, Mrs. Krajczar testified that plaintiff's termination was not based upon any recommendation by defendant that plaintiff was "not feasible for rehabilitation." To the contrary, she testified that the recommendation of defendant in his memorandum of August 6, 1980 to the effect that the case should be closed, was not followed. Parenthetically, it is self evident that the Commission did not close plaintiff's file as recommended by defendant but continued to offer benefits to plaintiff on the conditions adopted from defendant's memo. Mrs. Krajczar also testified that the final decision to terminate plaintiff was based on his failure to live up to the "agreement" set forth in her letter of January 20, 1981. Despite the termination of the plaintiff for failure to cooperate, she further *272 testified that the Commission remains willing to reconsider plaintiff's case if the appropriate conditions as previously specified in her letter of January 20, 1981 are complied with.
On this appeal plaintiff merely contends that it was error to grant defendant's motion for summary judgment because there were issues of material fact which were in dispute and that the summary judgment was based on a collateral issue. He contends that he was terminated from further benefits by the Commission because of the report of defendant; that the defendant rendered an opinion without having seen or examined plaintiff; that the file for all practical purposes was closed when defendant's recommendations were received; that the conditions were never agreed to by plaintiff and were therefore unilaterally imposed; that the closing of the file was the direct result of defendant's recommendation that plaintiff was unrehabilitative, and the plaintiff's attorney presented evidence that the closing of the file was based on psychiatric reasons.
Taking plaintiff's last point first, the "evidence" that plaintiff's counsel refers to was nothing more than a report which was objected to by defense counsel and was never entered into evidence and is not a part of the record. R. 2:5-4. Also, it is of no moment whether plaintiff did or did not "agree" to the conditions imposed in the various letters of Mrs. Krajczar. These were conditions required by the Commission as a prerequisite for plaintiff to continue benefits. As to the contention that, for all practical purposes, the file was closed at defendant's recommendation, the record indicates that the file was not closed then nor has it been closed even to this date. As Mrs. Krajczar testified, plaintiff may still obtain continued benefits by simply complying with the conditions in her letter of January 20, 1981. Plaintiff does not argue nor contend that the Commission does not have authority to impose conditions on its clients as a prerequisite to the receipt of benefits.
Concerning the remaining alleged factual disputes, we are not aware of, nor has any authority been cited to us, to *273 prohibit an institution from retaining consultants for its own information and guidance to determine whether to admit a client for benefits, to determine a course of treatment or whether treatment is necessary, when or whether to terminate benefits and whether to readmit clients to continue benefits and to impose conditions for any of those determinations.
We are not favored in any respect as to the theory or nature of plaintiff's case nor cited any substantive law to support that theory. Plaintiff's complaint sounds in medical malpractice. The complaint alleges that defendant is a physician engaged in the practice of medicine; that he did not have or exercise the degree of care and knowledge ordinarily exercised or possessed by physicians in the Township of South Orange and was guilty of negligence in failing to make an examination of plaintiff so as to be able to make a proper diagnosis and that despite this failure to examine plaintiff he issued a diagnosis of plaintiff's condition. The second count charges that defendant maliciously prepared and composed a memo which was relied upon by the Commission in its determination of plaintiff's fitness for further vocational rehabilitation and that the contents are false and made with such recklessness as to amount to a wanton disregard for the rights of plaintiff.
Despite the foregoing, at the motion for summary judgment when the question of malpractice was brought up, it was immediately discontinued without further comment. Consequently, we are uncertain as to whether plaintiff charges defendant with negligence in the sense of medical malpractice or negligence in the sense of an ordinary violation of a duty without the physician-patient relationship. Under either theory, we are satisfied that the complaint was properly dismissed.
Malpractice has been defined to denote a breach of the duty owed by one in rendering professional services to a person who has contracted for such services; in physician-malpractice cases, the duty owed by the physician arises from the physician-patient relationship. Rogers v. Horvath, 65 Mich. App. 644, 237 *274 N.W.2d 595, 597 (Ct. of App. 1976). See Annotation, "What constitutes physician-patient relationship for malpractice purposes." 17 A.L.R. 4th 132 (1982). However, medical malpractice does not necessarily rely upon a contract but merely upon a relationship between the physician and the patient. Annotation, supra, §§ 3-10.
Even if a physician-patient relationship does not exist within the full meaning of that term, a physician, in the exercise of his profession examining a person at the request of an employer, owes that person at least a duty of reasonable care. Beadling v. Sirotta, 41 N.J. 555, 561 (1964). However, the scope of that duty where a precise physician-patient relationship does not exist is not defined. Ibid.
Here of course the thrust of plaintiff's complaint is that defendant gave a diagnosis without making a physical examination. Our review of the record does not indicate that the defendant made a diagnosis of plaintiff's condition; he gave an opinion to the Commission based on his examination of plaintiff's record. His opinion to the Commission was much the same as the defendant doctor in Beadling, supra, where Dr. Sirotta gave an opinion based on x-ray findings which may not have been definitive or even accepted. See Beadling, supra, 41 N.J. at 561.
In order to establish a cause of action plaintiff has the burden of alleging and proving a set of facts showing he has a substantive right entitling him to maintain an action and that there was a violation of that right by the defendant which caused injury or damage. As stated in Caputzal v. The Lindsay Co., 48 N.J. 69 (1966), "The two applicable concepts in the case of nonintentional conduct or failure to act are the very basic ones of duty, and the breach thereof, and proximate, or legal cause of the injury complained of." Id. at 74 citing Prosser, Law of Torts, (4th ed. 1971) § 30 p. 143. There must be an antecedent duty to use care with respect to the interest invaded, McKinley v. Slenderella Systems of Camden, N.J. Inc., 63 N.J. Super. 571, 580 (App.Div. 1960) which duty, if *275 observed, would have averted plaintiff's injuries. Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393 (1963). There can be no actionable negligence if defendant or the act violated no duty to the injured plaintiff. Krauth v. Geller, 54 N.J. Super. 442, 453 (App.Div. 1959) aff'd 31 N.J. 270 (1960). The question of the existence of duty is one of law and not one of fact. Essex v. New Jersey Bell Telephone Company, 166 N.J. Super. 124, 127 (App.Div. 1979); McKinley v. Slenderella, supra, 63 N.J. at 581; Restatement, Torts 2d § 328B(b) (1965); Prosser, Law of Torts, supra, § 37 at 206. In making this determination New Jersey courts frequently apply the standard first enunciated in Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583 (1962), "The question is not simply whether a[n] ... event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."
Naturally the same requirement of duty is a necessary element in medical malpractice cases or in similar cases, such as the facts in the present case, which, for want of a better term, we shall call a quasi-medical malpractice case. Rainer v. Grossman 31 Cal. App.3d 539, 107 Cal. Rptr. 469 (Ct. of App. 1973); Chatman v. Millis, 257 Ark. 451, 517 S.W.2d 504, 506 (1975). In Rainer the defendant physician was given plaintiff's history as a guest lecturer at a group of some 20 to 50 physicians without plaintiff's name being mentioned. He gave an opinion on the case history but never met, saw or treated plaintiff. He used this as an illustration in teaching. In a malpractice action a summary judgment in favor of defendant doctor was upheld on the basis of the lack of duty to plaintiff.
In Chatman, the wife in a matrimonial action suspected the husband of homosexual conduct with their 2 1/2 year old son during visitation. To terminate visitation she engaged defendant psychologist to examine the child concerning the husband's *276 propensities. The defendant psychologist gave an opinion to the wife's attorney that based on the examination of the son and his mother it would not be a good idea to allow the son to continue to visit the plaintiff. Plaintiff husband brought an action for malpractice and defamation against the psychologist. Summary judgment was granted on the malpractice action and the defamation action was dismissed because of improper venue. In upholding the dismissal of the malpractice action the Supreme Court of Arkansas stated that
[T]here must be a duty as a doctor, owed from the practitioner to the patient. Under the allegations before us, [defendant] made no examination of [plaintiff]; in fact, he did not even know [plaintiff], and had never seen him. Appellant was not a patient of [defendant] and the diagnosis reached was not for the benefit of [plaintiff]. Even if the findings of the psychologist were negligently made, [plaintiff] did not rely upon his diagnosis to his detriment. [517 S.W.2d at 506.]
In the present case the duty of defendant was to the Commission, not plaintiff. Wilcox v. Salt Lake City Corporation, 26 Utah 2d 78, 484 P.2d 1200, 1201 (Sup.Ct. 1971) (no physician-patient relationship  defendant contracted with City to examine chest x-rays for tuberculosis as a service to the public); Johnston v. Sibley, 558 S.W.2d 135 (Texas Ct. of App. 1977); Keene v. Wiggins 69 Cal. App.3d 308, 315, 138 Cal. Rptr. 3, 7 (Ct. of App. 1977).
In Davis v. Tirrell, 110 Misc.2d 889, 443 N.Y.S.2d 136 (Sup.Ct. 1981) an infant plaintiff and his parents brought a medical malpractice action against a defendant psychiatrist who was retained by the Committee on the Handicapped to give an opinion and evaluation concerning the minor plaintiff's condition. The Committee determined that the child should be classified as "emotionally handicapped" and at a hearing the defendant psychiatrist so testified. The Supreme Court of New York held that there was no physician-patient relationship which would give rise to a medical malpractice action and a motion to dismiss was granted. The court made an analogy to an examination in personal injury litigation where the plaintiff submits to an examination by the defendant's doctor for an evaluation. 433 N.Y.S.2d at 138.
*277 Here, the Commission in the administration of its services to prospective clients is certainly entitled to the advice and guidance, not only of its own staff, but outside experts and consultants as well to determine the continuance of benefits to clients. Just as in Beadling v. Sirotta, supra, where the duty of the defendant doctor was limited to the needs of the employer for whom he examined plaintiff as a condition of employment, 41 N.J. 561 the duty of the defendant in these proceedings is limited to the Commission, and is not owed to plaintiff.
We are aware that the complaint suggests malice in its allegation that defendant's publication was made with "such recklessness ... as to amount to a wanton disregard to the rights of plaintiff." That issue was apparently not argued below and is evidently waived here, for counsel for plaintiff advises in his brief that "it is plaintiff's contention that the closing of his file was as a result of defendant's memorandum which was negilgently [sic] written." As to any claim that point two of that brief preserves the issue by setting forth that "what is at issue here are the actions and motives of Dr. Lowell," we say only that the record contains not a scintilla of evidence, direct or circumstantial, to support that claim.
Affirmed.