Filed 4/20/26  Davis v. Corvel Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRIANNA DAVIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CORVEL CORPORATION et al.,<br><br>    Defendants and Respondents. | D085457<br><br><br>(Super. Ct. No. 37-2023-00004740-CU-NP-NC) |

APPEAL from orders of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Affirmed.

Marcus Jackson; Gelb Law and Yisrael Gelb for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, Marty B. Ready and Gary S. Pancer for Defendants and Respondents, Corvel Corporation and Rob Maag.

Lotz, Doggett & Rawers, Jeffrey S. Doggett, Kimberlee Rawers and Cassandra F. Robinson for Defendant and Respondent, Dr. Patrick O'Meara.

Brianna Davis appeals from orders dismissing defendants Corvel Corporation (Corvel), Rob Maag, and Dr. Patrick O'Meara (Dr. O'Meara) following the sustaining of their demurrers as to Davis's third amended complaint (TAC).  Davis asserts the trial court erred in concluding that her claims were precluded by the workers' compensation exclusivity doctrine.  We

conclude that the exclusivity doctrine precludes the asserted claims and therefore affirm the orders of dismissal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Allegations in the TAC

"Because '[t]his case comes to us after the sustaining of a general demurrer . . . , we accept as true all the material allegations" in the operative TAC.  (*Carles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 807 (*Vacanti*).)  Therein, Davis alleged as follows:

Davis injured her back, neck and legs while working as an EMT at the Tri-City Medical Center on May 15, 2018.  She filed a workers' compensation claim based on the injury.  A couple of months later, Davis suffered severe pain and was medically limited to working modified duty from July 26, 2018 until August 31, 2018.  By October 29, 2018, Davis was working a modified schedule of three 4-hour shifts per week.  In late November 2018 an unnamed doctor determined that Davis's back and leg pain were caused by an industrial injury.

In January 2019, Davis began working three 8-hour shifts per week. However, on February 8, 2019, she was sent home as her employer's policy was to give modified duty for no more than 90 days.  That same month, Dr. O'Meara completed an evaluation and indicated that Davis was not disabled. As a result, in March, Davis "was directed to return to working full duty with no restrictions."

According to the TAC, Corvel—a company that provided workers' compensation claims administration services for Tri-City Medical Center— and Maag—Corvel's  claims adjuster—pressured Dr. O'Meara to alter his medical findings to state that Davis was not disabled, that her injury did not require further medical treatment, and that she required no work

2

restrictions, so that Corvel could deny Davis continued worker's compensation benefits.

Davis returned to work on March 8, 2019, but she continued to suffer "lots of pain attempting to perform the full duties of her job." On May 25, 2019, while working, Davis suffered a second industrial injury when she performed chest compressions intermittently for over two hours. On May 28, 2019, Davis filed a new claim for workers' compensation based on this second injury.

Following this second injury, the TAC alleges that Corvel, Maag, and Dr. O'Meara conspired to deny workers' compensation and disability benefits to which Davis was legally entitled. Dr. O'Meara again provided false statements and findings in a July 2019 medical report. Dr. O'Meara said that he physically examined Davis on July 20, 2019, but he did not. The July 2019 report falsely stated that Davis had reached maximum medical improvement, that she was not disabled, and that she did not need any work restrictions. As a result, Corvel denied Davis's claims. Davis aggravated her injury further after returning to work without adequate restrictions.

Maag also put pressure on another doctor, "Dr. M.," to ensure that his reports found patients either not disabled or disabled due to a pre-existing condition. When Dr. M. refused to provide a false diagnosis in Davis's case, Maag and others stopped referring patients to him, causing Dr. M to lose out on "big contracts." "In the July 2019 medical report, O'Meara, Corvel, Maag, and Tri City Medical Center concealed the existence of Davis's injury as well as the connection between that injury and Davis's employment, and as a result Davis's injury was aggravated because she was returned to work without medical restrictions she needed."

A third physician, Clarence Lee, also treated Davis. "In or around August 2019, Dr. Lee refused to fill out paperwork for Davis to obtain disability benefits because of the pressure he too felt from Defendants." "Dr. Lee concealed and refused to disclose medical information regarding Davis's physical disability related to her May 2019 industrial injury to the California Employment Development Department that would have permitted Davis to obtain disability payments she needed for her family."

Based on the foregoing allegations, Davis asserted a first cause of action for fraud and deceit, pursuant to Civil Code sections 1709 and 1710 "and/or other statutory or common law provisions"; and a second cause of action for violations of the Unfair Competition Law (UCL; Bus. & Prof. Code § 17200 et seq.) against Corvel, Maag, Dr. O'Meara, and Dr. Lee. Under the fraud cause of action, Davis alleged further that the defendants' "actions constituted violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Section 1962(c)."

## B. Demurrers to the TAC

Corvel, Maag, and Dr. O'Meara each demurred to the TAC, and filed motions to strike portions of the TAC.[1] The trial court sustained the demurrers without leave to amend and granted the motions to strike.

As to Corvel and Maag, the trial court found that Davis's claims were subject to the exclusivity provisions of the California Worker's Compensation Act (WCA) (Lab. Code § 3200 et seq.)[2] The trial court explained:

---

[1] Dr. Lee did not file a demurrer and is not a party to the present appeal. Corvel, Maag, and Dr. O'Meara also filed demurrers to the original, first, and second amended complaints. Davis amended the original complaint before the trial court ruled on the demurrers. The trial court sustained the demurrers as to the first and second amended complaints with leave to amend.

4

"The injuries alleged in the TAC fall within the scope of the WCA's exclusivity provisions as they stem from conduct occurring during the workers' compensation claims process."

"The TAC, in essence, contends that [Corvel and Maag] were part of a conspiracy to deny [Davis] workers' compensation benefits through a pressure campaign and the subsequent submission of false/fraudulent medical reports. As the court previously has held, the foregoing conduct is a normal part of the workers' compensation claims process and thus subject to the WCA's exclusivity provisions."

The court acknowledged Davis's contention "that [Corvel and Maag] engaged in fraud to prevent her workers' compensation claim from being processed in the first place and, as a result, the Workers' Compensation Appeals Board has no jurisdiction to redress her injury(ies)." The court disagreed, and quoting *Marsh & McLennan, Inc. v. Sup. Ct.* (1989) 49 Cal.3d 1 (*Marsh*) the court explained:

"Under California law, 'the workers' compensation system encompasses all disputes over coverage and payment, whether they result from actions taken by the employer, by the employer's insurance carrier or . . . by an independent claims administrator hired by the employer to handle the worker's claim.' [Citation.] Such disputes include causes of action predicated upon a compensable workplace injury as well as causes of action based on injuries collateral to or derivative of such injury," including "damages arising from the workers' compensation claims process, including contentions that such benefits were wrongfully delayed or discontinued." (*Marsh, supra,* 49 Cal.3d at p. 8.)

Thus, the court concluded Davis's claims against Corvel and Maag were subject to the WCA's exclusivity provisions.

---

2      Further unspecified statutory references are to the Labor Code.

The trial court further found that the alleged acts or motives did not fall outside the risks encompassed by the compensation bargain. The court explained, "[Davis] 'cannot hide from the sweep of WCAB jurisdiction merely by alleging that an insurer's conduct violates the UCL or is otherwise tortious. . . .' Nor does [Davis's] characterization of the alleged fraud as a scheme/conspiracy insulate her claims from preemption."

The court noted that Davis had now alleged that Corvel and Maag's actions violated the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962(c)), but concluded that Davis did not allege facts sufficient to constitute a RICO claim. The court explained:

> The "TAC is devoid of factual allegations that [Corvel and Maag], in engaging in their pressure campaign and/or assisting in Dr. O'Meara's issuance of the allegedly false medical reports, were engaged in conduct affecting interstate commerce. Moreover, the TAC fails to allege that [Corvel and Maag] engaged in continuing racketeering activity. The TAC alleges that [Corvel and Maag's] fraudulent conduct, i.e., the collusion and pressure placed upon Dr. O'Meara by [Corvel and Maag] to generate false medical reports after examining Davis, was completed once Dr. O'Meara submitted his July 2019 report. At the latest, [Corvel and Maag's] conduct was completed in August 2019 when Dr. Lee refused to fill out paperwork from [Davis] because of [Corvel and Maag's] pressure campaign against him."

The trial court issued a similar ruling sustaining Dr. O'Meara's demurrer and granting Dr. O'Meara's motion to strike portions of the TAC. The court noted Davis's additional assertion that Dr. O'Meara does not qualify as an "employer" and therefore is not subject to the exclusivity provisions of the WCA. The court explained, "Employer status is not material to determining whether [Dr. O'Meara] is covered by the WCA's exclusivity bar." The court again cited to *Marsh*, noting that in that case:

6

"[T]he California Supreme Court rejected the argument that a determination as to whether a defendant may invoke the WCA's exclusivity protections should depend upon the defendant's status as opposed to the nature of the defendant's actions. [Citation.] Toward that end, the WCA applies to [Dr. O'Meara] as the WCA 'covers all disputes over the payment of compensation to injured employees, regardless of what type of entity refused or delayed those payments.'" (*Marsh, supra,* 49 Cal.3d at p. 10.)

The trial court likewise rejected Davis's assertion that Dr. O'Meara stood in a dual capacity as both an employer and provider of medical services. The court explained that Davis's "alleged injury arose entirely from [Dr. O'Meara's] allegedly fraudulent conduct in the workers' compensation claims process. Davis does not allege that Dr. O'Meara engaged in negligent conduct or that he rendered medical care to [Davis] separate and apart from the role he played as a physician reviewing her workers' compensation claim."

Accordingly, the trial court sustained Corvel, Maag, and Dr. O'Meara's demurrers as to the first and second causes of action without leave to amend. The trial court also granted their motions to strike portions of the TAC; namely, Davis's requests for punitive damages and attorney fees. The trial court issued orders of dismissal as to defendants Corvel, Maag, and Dr. O'Meara, based on the sustaining of the demurrers without leave to amend.

Davis filed a timely notice of appeal.

## II. DISCUSSION

Davis asserts that the exclusivity doctrine does not negate her claims in the TAC for several related reasons. She argues that the fraud and UCL claims are predicated on actions outside the scope of the general worker's compensation bargain; that Dr. O'Meara was not protected in his capacity as a treating physician; and that Maag was also not protected in his individual capacity.

7

## A. Standard of Review

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Kirwan*).)

"The burden of proving such reasonable possibility is squarely on the plaintiff." (*Kirwan, supra,* 39 Cal.3d at p. 318.) As the party asserting error, the appellant "must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived"]; *Dabney*

*v. Dabney* (2002) 104 Cal.App.4th 379, 384 [court disregards argument for which no authority is furnished].)

**B.     The Worker's Compensation Exclusivity Doctrine**

As our high court has explained, "California's workers' compensation system is now governed by the Workers' Compensation Act [citation], 'a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment.'" (*King v. CompPartners, Inc.* 5 Cal.5th 1039, 1046 (*King*).) The WCA creates what is often referred to as the worker's compensation bargain, under which " ' "the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability." ' " (*Ibid.*) "The employee, for his or her part, ' "is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." ' " (*King,* at pp. 1046–1047.)

"Under the WCA, an employer must provide an injured worker with all medical treatment reasonably required to cure or relieve the effects of his or her injury.  [(§ 4600.)]  When an injured employee suffers an industrial injury, the employee reports the injury to his or her employer and then seeks medical care from a treating physician.  After examining the worker, 'the treating physician recommends any medical treatment he or she believes is necessary and the employer is given a treatment request to approve or deny.'" (*King, supra,* 5 Cal.5th at p. 1047.)  "[W]hile an employer can unilaterally approve a treatment request, only a licensed physician competent to evaluate the 'specific clinical issues' can modify, delay, or deny a treatment request." (*Id.* at p. 1048.)

When there is a dispute as to the appropriate level of care, an "[i]ndependent medical review 'is performed by an independent review organization, which assigns medical professionals to review pertinent medical records, provider reports, and other information submitted to the organization or requested from the parties.' " (*King, supra,* 5 Cal.5th at p. 1049.) "The independent reviewer is tasked with determining whether the requested treatment is 'medically necessary based on the specific medical needs of the employee and the standards of medical necessity as defined in subdivision (c) of Section 4610.5.' " (*Ibid.*) "If an employee disputes an adverse decision on independent medical review, he or she may appeal that decision to the Workers' Compensation Appeals Board. (*Ibid.*) "[D]ecisions of the Board may in turn be appealed to a Court of Appeal." (*Ibid.*)

"It is by now well established that the WCA's exclusivity provisions preempt not only those causes of action premised on a compensable workplace injury, but also those causes of action premised on injuries ' "collateral to or derivative of" ' such an injury." (*King, supra,* 5 Cal.5th at p. 1051.) "Such collateral or derivative injuries include injuries stemming from conduct occurring in the workers' compensation claims process." (*Id.* at p. 1052.) This is, in part, because coverage under the WCA is also broad. (*Ibid.*) "California courts have held, for example, that '[a]n employee is entitled to compensation if a new or aggravated injury results from medical or surgical treatment for an industrial injury,' " "regardless of ' "whether the treatment [was] provided by a physician selected by the employee or by the employer or the employer's compensation carrier." ' " (*King,* at p. 1052.) "And where the remedy is available as an element of the compensation bargain it is exclusive of any other remedy to which the worker might

otherwise be entitled from the employer: 'The employer's compensation obligation is 'in lieu of any other liability whatsoever to any person.' " (*Ibid.*)

"In determining whether exclusivity bars a cause of action against an employer or insurer, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions. Where the alleged injury is 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA, a cause of action predicated on that injury may be subject to the exclusivity bar." (*Vacanti, supra,* 24 Cal.4th at p. 811.) "If the alleged injury falls within the scope of the exclusive remedy provisions, then courts consider whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain. '[I]n some exceptional circumstances the employer is not free from liability at law for his intentional acts even if the resulting injuries to his employees are compensable under workers' compensation.' " (*Id*. at pp. 811–812.)

If the alleged acts are a normal part of, or collateral to, the worker's compensation process, and the motive behind the acts does not violate a fundamental policy of the state, the cause of action is barred. (*Vacanti, supra,* 24 Cal.4th at p. 812.)

## C.     Davis's Claims are Excluded Under the WCA

Here, taking the allegations in the TAC as a whole, we independently conclude, as the trial court did, that Davis's claims in the TAC arise from a normal part of the worker's compensation process—the determination of the extent of the injury and the necessary medical treatment and/or accommodations—and that Davis has not adequately alleged that the motives behind the alleged actions of the defendants violate a fundamental policy of the state. Accordingly, Davis's claims are barred by the WCA. (See *Vacanti, supra,* 24 Cal.4th at p. 812.)

11

Davis raises several arguments to the contrary, but we are not persuaded. Davis's primary contention is that both her fraud and UCL causes of action are outside the scope of the exclusivity doctrine because Dr. O'Meara's February 2019 and July 2019 medical reports constituted "outright fraud." In doing so, it appears that Davis is attacking the second step of the analysis, and asserting that, although the medical reports were part of the typical claims process, the actions or motives of the named defendants were not within the typically expected risks associated with the compensation bargain and instead violate a fundamental policy of the state. Davis relies on cases holding that an insurer's fraudulent denial of the *existence* of insurance exceeds the normal role of an insurer and therefore falls outside the scope of the normal WCA process. (See, e.g., *Jablonski v. Royal Globe Ins. Co.* (1988) 204 Cal.App.3d 379, 391, fn. 6 ["This, after all, is not a case of a legitimate dispute over coverage or premium payments or the lapse of a policy. It is instead, as pled by plaintiff and admitted by defendants' demurrer, a case of outright fraud."].)

Davis also relies on *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, another case in which the underlying claims were based on concealment, although of a slightly different nature. There, the employee alleged that his employer had "known since 1924 that long exposure to asbestos or the ingestion of that substance is dangerous to health, yet it concealed this knowledge from plaintiff, and advised him that it was safe to work in close proximity to asbestos." (*Id*. at p. 469.) The employer also failed to provide adequate protective gear, and failed to inform doctors it retained about asbestos exposure, or the resulting development of pulmonary disease in the plaintiff. (*Ibid*.) Based on those allegations, the court held that the plaintiffs could not raise claims based on his industrial injury but could

12

pursue a claim based on the intentional concealment of the existence of an injury (pulmonary disease) and its connection with the employee's job. (*Id.* at p. 478.)

Here, Davis is not alleging that her employer denied the existence of a policy, or concealed any workplace hazard or injury. Rather, she is alleging that Corvel improperly denied additional medical treatment and accommodation, in part because Dr. O'Meara (allegedly by fraud) concluded that she did not need them. Notably, there is no allegation that Davis was not aware of her rights under the WCA or of any hazard or injury, or that any of the defendants took any action to *conceal* a policy, hazard, or injury. We acknowledge that Dr. O'Meara's finding that Davis was not disabled could arguably be considered a concealment. However, it is apparent from the complaint that Dr. O'Meara did acknowledge that Davis was injured at one point; there was simply a dispute as to whether Davis continued to need treatment or accommodation.

At most, Davis alleges that Corvel, Maag, and Dr. O'Meara conspired to improperly characterize the ongoing nature of her injuries and/or her need for further treatment or accommodation. As the trial court concluded, it is not enough for Davis to simply allege that the denial of her claim was fraudulent, or that the actions of Corvel, Maag, and/or Dr. O'Meara were tortious. (See *Marsh, supra,* 49 Cal. 3d at p. 8 ["the workers' compensation system encompasses all disputes over coverage and payment," not just those against the employer].) At its core, Davis's claim is that her worker's compensation claim was improperly limited or denied; Davis can pursue that claim through the normal WCA process. As such, Davis's alleged injury falls within the scope of the compensation bargain, and Davis has not adequately pled that defendants' actions or motives violate a fundamental policy of the state or

13

otherwise take the claims outside the expected risks of the WCA claims process.

In a somewhat related argument, Davis asserts that the claims against Maag are not subject to the exclusivity doctrine because Maag was sued in his individual capacity. This argument fails for many of the same reasons. The TAC alleges that Maag pressured Dr. O'Meara to alter his prior medical findings so that Corvel could deny Davis continued worker's compensation benefits. There is no dispute that Maag allegedly did so in his role as a claims adjuster for Corvel. As the trial court aptly concluded, Maag's actions were undoubtedly conduct occurring during the workers' compensation claims process. (See *King, supra,* 5 Cal.5th at p. 1052; *Vacanti, supra,* 24 Cal.4th at pp. 811–812; *Marsh, supra,* 49 Cal.3d at p. 8; see also *Mitchell v. Scott Wetzel Services, Inc.* (1991) 227 Cal.App.3d 1474, 1479 ["decisions have established delay or refusal to pay benefits, even if done intentionally and with full knowledge of the hardship to the injured claimant, is insufficient to avoid exclusive jurisdiction"].)

Davis asserts further that as a treating physician, Dr. O'Meara is not protected under the WCA exclusivity doctrine. Davis relies on the dual capacity doctrine explained in *Duprey v. Shane* (1952) 39 Cal.2d 781, but this case is readily distinguishable. In *Duprey*, the court considered whether an injured employee may recover, separately, in tort against a treating physician, or other medical professional (i.e., a chiropractor), for a further injury caused by negligent treatment of the original industrial injury. (*Id.* at p. 784.) The court concluded "that an employee injured in an industrial accident may sue the attending physician for malpractice if the original injury is aggravated as a result of the doctor's negligence, and that such right exists whether the attending doctor is the insurance doctor or the employer."

14

(*Id*. at p. 793.) In other words, a further injury caused by the treating physician's negligence in rendering care for the original injury is not a normal part of the worker's compensation process. (See *Vacanti, supra,* 24 Cal.4th at p. 812; see also *Hendy v. Losse* (1991) 54 Cal.3d 723, 739 [discussing amendments to the WCA following *Duprey*].)

Here, Davis is not alleging that Dr. O'Meara caused a different physical injury, or that he aggravated her existing physical injury through improper treatment. Rather, Davis alleges that Dr. O'Meara caused her not to receive workers' compensation benefits, including work hour accommodations, that she was entitled to by falsifying two reports regarding the extent of her injuries.

The exact nature of the relationship between Davis and Dr. O'Meara is not apparent from the allegations in the TAC and, rather than clarify the relationship, Davis attempts to take advantage of the vague nature of the pleading in her briefing on appeal. In response to Dr. O'Meara's assertion that his role was limited to evaluating Davis's workers' compensation claim, Davis argues that the TAC alleges only that Dr. O'Meara is a physician and that he treated Davis, implying that Dr. O'Meara may have been Davis's personal physician as well.

Regardless, there is no dispute Davis's claims are based on the allegation that Dr. O'Meara's alleged inaccurate reports precluded her from receiving treatment or benefits that she believes she is entitled to under the WCA. We infer from those allegations that Dr. O'Meara was Davis's primary treating physician, as he was apparently responsible for making a recommendation to Corvel regarding the scope of the injury and any necessary treatment or restrictions. (See Cal. Code Regs., tit. 8, § 9785, subd. (a)(1) ["The 'primary treating physician' is the physician who is primarily

15

responsible for managing the care of an employee, and who has examined the employee at least once for the purpose of rendering or prescribing treatment and has monitored the effect of the treatment thereafter"]; *id.,* subd. (b)(1) ["An employee shall have no more than one primary treating physician at a time"].)

In any event, the alleged inaccurate reports containing Dr. O'Meara's recommendations were indisputably part of the normal worker's compensation process. If Davis disagreed with Dr. O'Meara's report(s), or the recommendations therein, she had recourse to seek review under the WCA. Beyond that statutorily defined process, the TAC does not establish that Dr. O'Meara breached any duty owed to Davis. (See, e.g., *Keene v. Wiggins* (1977) 69 Cal.App.3d 308, 314 ["the physician, as here, hired solely to conduct an examination for purposes of rating disability compensation benefits, could not reasonably expect the claimant to rely on his opinion"]; cf. *Vacanti, supra,* 24 Cal.4th at p. 826 ["plaintiffs' Cartwright Act claim alleges that each defendant conspired with parties that had *no* role in the handling of that defendant's claims and sought to influence lien claims filed against *other unrelated* insurers"].)

As a final matter, Davis asserts this court should, at a minimum, provide her leave to amend her complaint. The trial court did so three times, and in each instance, Davis failed to state a cognizable claim. Davis does not provide any new information or alleged facts in her briefing on appeal, and we are not persuaded that an additional round of amendments would allow her to state a viable claim.[3]

---

[3] Specifically, as to the RICO allegations, Davis does not dispute the trial court's conclusion that the TAC did not allege facts sufficient to constitute a RICO claim, nor does she suggest how she could overcome that insufficiency if she were to amend the complaint a fourth time.

16

### III.  DISPOSITION

The orders are affirmed.  Respondents are awarded costs on appeal.


                                                                KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.